# Pittsburgh Railways Co., Appellant, *v.* Public Service Commission (No. 1).

*Street railways—Carriers—Rates—Change of rates—Posting and publication—Public Service Commission—Act of July 26, 1913, P. L. 1374.*

A street railway company which files with the Public Service

Commission a schedule of a change of rates, does not comply with the provisions of paragraph seven of Sec. 1 of Art. II, of the Act of July 26, 1913, P. L. 1374, requiring that no change in any tariff or schedule shall be effective, except after thirty days' notice to the commission and to the public, "posted and published" in the manner required with respect to original tariffs, if it appears that the schedule of the change was deposited in the different stations in rooms occupied by employees of the company, but to which the public did not resort, and notices were posted in stations, car barns or other places to which passengers did resort, informing them that information of the rates would be furnished them on request.

Argued Oct. 30, 1916.   Appeal, No. 97, April T., 1917, by plaintiff, from order of Public Service Commission No. 1037, Complaint Docket 1916, in the Matter of the Complaint of the City of Pittsburgh.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Petition against change of rates.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order directing the respondent to cease and desist from collecting any rates, except those contained in a tariff filed on June 17, 1914.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *A. W. Robertson,* for appellant.—The tariff was properly posted in every ticket office of the company, in exact accordance with the Public Service Law and with Tariff Circular No. 4 of the Pennsylvania Public Service Commission; and the filing of the tariff with the commission is the essential prerequisite, while the requirement of "posting" tariffs in ticket offices is directory only and has no bearing on the validity of the rate:  Texas & Pacific R. R. Co. v. Cisco Oil Mill, 204 U. S. 449;  Kansas City Southern Ry. Co. v. C. H. Albers Commission Co., 223 U. S. 573;  United States v. Miller, 223 U. S. 599.

*Berne H. Evans,* assistant counsel, for appellee.—The distinction between posting and publishing had been recognized by the courts in construing the Interstate Act: Texas and Pacific Railroad Company v. Cisco Oil Co., 204 U. S. 449.

Recalling that the Interstate Act does not require posting of notice of increase and our act does, it will be seen that the reasoning there does not apply here. It cannot be logically said that posting a notice of change that will take effect in the future "has for its object the affording of special facilities to the public for ascertaining the rates actually in force"; its object clearly is to call attention to a change which is going to occur and that object cannot be accomplished unless the requirement is a "condition precedent to the establishment and putting in force of the tariff of rates": Kansas City Southern Railway Company v. C. H. Albers Commission Company, 223 U. S. 573; United States v. Miller, 223 U. S. 599.

OPINION BY HENDERSON, J., March 13, 1917:

This is an appeal from the decision of the Public Service Commission requiring the Pittsburgh Railways Company to desist from collecting an increased rate of fares which the company undertook to establish by a supplementary schedule of fares filed with the Public Service Commission on May 22, 1916. The paper filed with the Public Service Commission was contained in a cover bearing the following superscription: "Supp. No. 2, P. S. C. Pa. No. 1," but having no other indication of the contents of the enclosure. Copies of the schedule were sent to agents of the appellant at its offices and the stations where the business of the company was transacted and with each copy so sent was a letter containing the following instruction: "This is to be kept with the copy of the schedule and rates of fares for street car service on file at your station." The copies of the amended schedule thus distributed were placed by the employees to whom they were sent, among the papers of the company there

kept or were hung on the walls or placed on desks in rooms occupied by employees of the company but were not in rooms to which the public resorted. No other information was given of the proposed increase in the fare than that arising from the filing of the amendment to the schedule with the Public Service Commission and with the agents of the company. The questions in controversy are whether the amendment to the schedule was "posted and published" in accordance with the provisions of the Public Service Commission Act of July 26, 1913, and whether the amendment plainly stated the exact changes proposed to be made in the tariff then in force and whether an increase or decrease. It is provided in paragraph seven of Section 1 of Article II of the statute that it shall be the duty of every public service company "to make no change in any tariff or schedule which shall have been filed or published or posted by any public service company in compliance with the preceding sections except after thirty days' notice to the commission and to the public, posted and published in the manner, form and places required with respect to the original tariffs or schedules which shall plainly state the exact changes to be made in the tariffs or schedules then in force and whether an increase or decrease and the time when the proposed change shall go into effect; and all such changes shall be shown by filing, posting and publishing new tariffs or schedules or shall be plainly indicated in the tariffs or schedules in force at the time and kept open to the public inspection." The Public Service Commission determined that the supplementary schedule was not a legally filed, posted and published tariff and that there was nothing therein which plainly stated the exact change proposed to be made and that it contained nothing which indicated whether or not there was to be an increase or decrease in fares. The contention of the appellant is that the tariff was properly posted and published and that it plainly shows a proposed increase in fares. It is not alleged that the company did any other

thing with reference to publishing the amendment of the schedule than file a copy in the office of the Public Service Commission and a photographic copy thereof in each of its car barns and at stations where passengers are received and at which station agents or ticket agents are employed. It is asserted by the appellant that the placing of a copy of the amended tariff in the custody of its employee or employees in its stations and car barns to which access might be had by the public on request is a compliance with the requirements of the law as to posting and publishing and that having sent a copy of the amendment to the schedule to each station, ticket office and car barn at which street railway tickets are customarily sold or at which they might be purchased if application were made it complied with all of the demands of the law as to notice of a change in its tariff increasing the rate of fare. It is further contended that the requirement for posting at stations is directory, not mandatory by reason whereof a failure to post and publish tariffs in the company's station would not have invalidated the rate. If this position is correct and the notice was sufficient in form the change in the tariff has taken effect and the appellant has avoided the burden of proof imposed by the 4th section of Article V of the statute which provides that whenever the commission receives a notice of any change proposed in any tariff or schedule filed or posted under the provisions of the act it shall have power to hold a public hearing and make investigations as to the propriety of the proposed change and make such order in reference to the new, rate as would be proper in a proceeding initiated after the same had become effective, at which hearing involving a proposed increase in rate the burden of proof to show that such increase is just and reasonable shall be upon the public service company. It will be observed that a prohibition is imposed on public service companies to change an established tariff except after thirty days' notice to the commission and to the public. The object of such a regulation is obvious. The

rate having once been established it is regarded prima facie as a proper rate. The public has an interest in the subject; the corporation is operated for the accommodation of the public and is limited in its charge to amounts which are reasonable. A change of rate imposing an additional burden on the public calls for explanation and justification before the commission. The legislative intention was therefore to give those interested a fair opportunity to appear at an appointed time before the commission to present objections to the proposed increase in order that the whole subject might be considered by the commission before a change of rate took effect. Provision is not only made for notice but for the manner and substance of the notice. It is to be posted and published in the manner, form and places required with respect to the original tariffs or schedules and shall plainly state the exact changes proposed to be made and whether an increase or decrease. Referring to the provisions of the statute as to the requirements with respect to original tariffs it will be seen that they also are to be posted and published in every office or station of the company open to the public where payments are made by patrons in such manner, form and place in such office or station as to be readily accessible and so that said tariffs and schedules may be conveniently inspected by the public. The duty to post and publish exists in each case. The notice of a change is a thing distinct from the tariff itself for the same clause after providing for the kind of notice provides as follows: "And all such changes shall be shown by filing, posting and publishing new tariffs or schedules or shall be plainly indicated upon the tariffs or schedules in force at the time and kept open to public inspection." The purpose of the notice with respect to a change in the rate is different from that applicable to an original tariff and the language is to be interpreted so as to accomplish the object intended; that is, to inform the public in advance of the intention to collect an increased fare. It is unnecessary to determine

whether the notice required is to be given separate and apart from the amended schedule as contended for by the appellees or whether it may be connected therewith. In either case the information would be given which the law contemplated. The appellant contends that notice is imparted and published by filing the schedule with the Public Service Commission and in the places designated by the law for that purpose. It is not a controverted proposition however that notice must be given of the intended change. The real question then is, what is meant by the requisition of the law that notice of the intended change be posted and published. If it be conceded that filing with the commission and in the stations, etc., of the company be a sufficient promulgation and publishing, account must still be taken of the necessity of posting the notice. The popular meaning of the word "post" corresponds with that attached to it by lexicographers. It means the bringing to the notice or attention of the public by affixing to a post or wall, or putting up in some public place; to placard. This is a usual and efficient method of bringing to the notice of the public matters in which they are interested and there is nothing in the statute which suggests that the term "posted" was used in any other sense than that. It was the means to be adopted to bring to the attention of the public a matter affecting their interests. The notice thus to be given is made a condition precedent to the establishment of an amended tariff. Original schedules are filed without prior notice. The obligation rests on the company to file such schedules but no provision is made for precedent notice of their adoption. But in the case of changes in the tariff or schedule thirty days' notice to the commission and the public must be given. It is admitted that there was no posting of notice by the appellant unless the filing of the amended schedule is to be regarded as posting. But when we consider that the words "posted" and "published" are used in connection, with reference to the subject, we are unable to view the

language in a light which makes the filing of a paper in the general office of the company and in its stations and car barns the equivalent of posting. The evidence shows that such filing did not have the effect of bringing notice home to the public in the City of Pittsburgh and as the purpose was to provide such notice it is more reasonable to conclude that the legislature meant what is ordinarily signified by the term used and which was more likely to produce the desired result than would be accomplished by placing the document which was intended to inform the public in a desk or in a private office or in some other place in which it could only be seen by the persons interested when specially asked for. Attention is called by the learned counsel for the appellant to the similarity between the Interstate Commerce legislation and the Public Service Statute in regard to adopting and changing rates, fares and charges. It will be observed, however, that the Interstate Commerce legislation with respect to changes requires thirty days' notice to the public "published as aforesaid." The word "posted" is omitted from the amendment of 1910 relating to that subject.

It is true, as pointed out in the appellant's argument, that the requirement of the Interstate Commerce law that schedules should be posted in two public and conspicuous places in every depot, etc., was not made a condition precedent to the establishment and putting in force of the tariff of rates but was a provision based upon the existence of an established rate, as was decided in Tex. & Pac. R. R. Co. v. Cisco Oil Mill, 204 U. S. 449. And the same ruling was made in Kan. City Southern Ry. Co. v. C. H. Albers Com. Co., 223 U. S. 573, and in United States v. Miller, 223 U. S. 599. But these decisions dealt with the establishment of the original tariffs. The companies were compelled to adopt schedules. They were also required to post the same in two public and conspicuous places in every depot, but this posting was not made a condition on which the rates

became effective. It was a provision based on the existence of an established rate and had for its object the affording of facilities to the public for ascertaining the rates actually in force. In the case last cited attention is called to the distinction between "publication" and "posting," the former consisting in promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined upon the carrier while the tariff remains operative, as a means of informing the public what are the rates in force. This applies, as will be observed, to existing rates. The distinction is that the company had authority to fix its original rates and file its schedules but in the case of a change of rate something must be done by the company before it could put the change in effect. That something is the giving of the notice by posting and publication of the proposed change, which notice shall plainly state the exact change proposed to be made in the tariffs or schedules then in force and whether an increase or decrease and the time when the proposed change will go into effect. This is clearly dealing not with a fact accomplished but with a proposal of the company to become an established rate after thirty days. It is urged, however, that the plan adopted was in accordance with Tariff Circular No. 4 of the Public Service Commission. It is unnecessary to consider whether the provisions of that document are in harmony with the statute with respect to the manner of posting and publishing tariffs. It is sufficient to say that that circular relates to established rates and was apparently intended to provide a means by which the tariffs and schedules could be conveniently inspected by the public. It does not attempt to dispense with the posting and publishing of notice of the intention to change a rate. It is not to be expected nor is it required that the public be alert to inquire from day to day at the various places of business of the company whether a change of rate is in contemplation. Information as to existing rates must

be sought after at the prescribed places, but notice of a changed rate must be brought to the attention of the public by posting and publishing. A notice in a station, car barn or other place to which the patrons resort informing them that information as to rates will be furnished them on request is not, we think, a lawful substitute for the notice of an intended change of tariff which the law requires to be posted and published. It is a fair inference from the evidence that the appellant's officers did not consider that the standing notice to apply to the company's employees for information as to tariffs gave general information that there was to be a change of rates of fare for when the new rate was about to be put into effect notice was given by advertisement in the city papers and by conspicuous cards posted in the street cars calling attention to the increased rate to be charged within a day or two.

The commission reached the conclusion that the amended tariff as filed did not plainly state the exact change proposed to be made and whether such change was an increase or decrease. We do not deem it necessary to enter into a discussion of the evidence on that subject as the first objection to the regularity of the procedure to change the rate is sufficient to support the action of the commission. We hold that the notice of a proposed change of the tariff and schedule was not posted and published as required by the statute; that such posting and publishing was a condition precedent to the taking effect of the changed rate and that the action of the commission in restraining the appellant from putting the new rate into operation was a lawful exercise of authority.

The appeal is dismissed at the cost of the appellant.