# City of Pittsburgh *v.* Pittsburgh Railways Company, Appellant.

# Jacoby *v.* Pittsburgh Railways Company, Appellant.

*Street railways—Rates—Change of rates—Posting and publication—Public Service Commission—Act of July 26, 1913, P. L. 1374.*

1. The posting and publishing of a schedule changing the rates of a railway company are a condition precedent to the taking effect of the changed rate, and where the schedule of change is not properly posted the Public Service Commission may restrain a railway from putting the rate into effect.

2. An order of the Public Service Commission, requiring a street railway company to desist from collecting an increased rate of fare, which the company undertook to establish by a schedule filed with the Public Service Commission, was properly affirmed by the Superior Court, where it appeared that copies of the new schedule were sent to the agents of the railway company at its offices and stations where the business of the company was transacted, with directions to keep a copy of the same on file with the copy of the schedule of fares for street car service on file at such stations, but where no copy of the schedule was posted in the rooms to which the public had access, as required by Section 1 of Article II of the Public Service Company Law.

Argued Oct. 9, 1917. Appeals, Nos. 77 and 78, Oct. T., 1917, by defendant, from decree of Superior Court, April T., 1917, Nos. 97 and 98, affirming order of Public Service Commission, Complaint Docket, 1916, Nos. 1037 and 1025, in cases of City of Pittsburgh v. Pittsburgh Railways Company and W. M. Jacoby v. Pittsburgh Railways Company. Before MESTREZAT, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Appeal from Superior Court.

HENDERSON, J., filed the following opinion, vide 66 Pa. Superior Ct. 243:

This is an appeal from the decision of the Public Service Commission requiring the Pittsburgh Railways Company to desist from collecting an increased rate of fares which the company undertook to establish by a supplementary schedule of fares filed with the Public Service Commission on May 22, 1916. The paper filed with the Public Service Commission was contained in a cover bearing the following superscription: "Supp. No. 2, P. S. C. Pa. No. 1," but having no other indication of the contents of the enclosure. Copies of the schedule were sent to agents of the appellant at its offices and the stations where the business of the company was transacted and with each copy so sent was a letter containing the following instruction: "This is to be kept with the copy of the schedule and rates of fares for street car service on file at your station." The copies of the amended schedule thus distributed were placed by the employees to whom they were sent, among the papers of the company there kept or were hung on the walls or placed on desks in rooms occupied by employees of the company but were not in rooms to which the public resorted. No other information was given of the proposed increase to the fare than that arising from the filing of the amendment to the schedule with the Public Service Commission and with the agents of the company. The questions in controversy are whether the amendment to the schedule was "posted and published" in accordance with the provisions of the Public Service Commission Act of July 26, 1913, and whether the amendment plainly stated the exact changes proposed to be made in the tariff then in force and whether an increase or decrease. It is provided in paragraph seven of Section 1, of Article II of the statute that it shall be the duty of every public service company "to make no change in any tariff or schedule which shall have been filed or published or posted by any public service company in compliance with the preceding sections, except after thirty days' notice to the commission and to the public, posted and published in the man-

ner, form and places required with respect to the original tariffs or schedules which shall plainly state the exact changes proposed to be made in the tariffs or schedules then in force, and whether an increase or decrease, and the time when the proposed changes will go into effect; and all such changes shall be shown by filing, posting and publishing new tariffs or schedules or shall be plainly indicated upon the tariffs or schedules in force at the time and kept open to the public inspection." The Public Service Commission determined that the supplementary schedule was not a legally filed, posted and published tariff and that there was nothing therein which plainly stated the exact change proposed to be made and that it contained nothing which indicated whether or not there was to be an increase or decrease in fares. The contention of the appellant is that the tariff was properly posted and published and that it plainly shows a proposed increase in fares. It is not alleged that the company did any other thing with reference to publishing the amendment of the schedule than file a copy in the office of the Public Service Commission and a photographic copy thereof in each of its car barns and at stations where passengers are received and at which station agents or ticket agents are employed. It is asserted by the appellant that the placing of a copy of the amended tariff in the custody of its employee or employees in its stations and car barns to which access might be had by the public on request is a compliance with the requirements of the law as to posting and publishing and that, having sent a copy of the amendment to the schedule to each station, ticket office and car barn at which street railway tickets are customarily sold or at which they might be purchased if application were made, it complied with all the demands of the law as to notice of a change in its tariff increasing the rate of fare. It is further contended that the requirement for posting at stations is directory, not mandatory; by reason whereof a failure to post and publish tariffs in the company's station would not have invalidated the

rate. If this position is correct and the notice was sufficient in form the change in the tariff has taken effect and the appellant has avoided the burden of proof imposed by the 4th section of Article V of the statute which provides that whenever the commission receives a notice of any change proposed in any tariff or schedule filed or posted under the provisions of the Act of July 26, 1913, P. L. 1374, it shall have power to hold a public hearing and make investigations as to the propriety of the proposed change and make such order in reference to the new rate as would be proper in a proceeding initiated after the same had become effective, at which hearing involving a proposed increase in rate, the burden of proof to show that such increase is just and reasonable shall be upon the public service company. It will be observed that a prohibition is imposed on public service companies to change an established tariff, except after thirty days' notice to the commission and to the public. The object of such a regulation is obvious. The rate having once been established it is regarded as prima facie a proper rate. The public has an interest in the subject; the corporation is operated for the accommodation of the public and is limited in its charge to amounts which are reasonable. A change of rate imposing an additional burden on the public calls for explanation and justification before the commission. The legislative intention was, therefore, to give those interested a fair opportunity to appear at an appointed time before the commission to present objections to the proposed increase in order that the whole subject might be considered by the commission before a change of rate took effect. Provision is not only made for notice, but for the manner and substance of the notice. It is to be posted and published in the manner, form and places required with respect to the original tariffs or schedules and shall plainly state the exact changes proposed to be made and whether an increase or decrease. Referring to

the provisions of the statute as to the requirements with respect to original tariffs, it will be seen that they also are to be posted and published in every office or station of the company open to the public where payments are made by patrons in such manner, form and place in such office or station as to be readily accessible and so that said tariffs and schedule may be conveniently inspected by the public. The duty to post and publish exists in each case. The notice of a change is a thing distinct from the tariff itself, for the same clause after providing for the kind of notice, provides as follows: "And all such changes shall be shown by filing, posting and publishing new tariffs or schedules or shall be plainly indicated upon the tariffs or schedules in force at the time and kept open to public inspection." The purpose of the notice with respect to a change in the rate is different from that applicable to an original tariff and the language is to be interpreted so as to accomplish the object intended; that is, to inform the public in advance of the intention to collect an increased fare. It is unnecessary to determine whether the notice required is to be given separate and apart from the amended schedule as contended for by the appellees or whether it may be connected therewith. In either case the information would be given which the law contemplated. The appellant contends that notice is imparted and published by filing the schedule with the Public Service Commission and in the places designated by the law for that purpose. It is not a controverted proposition, however, that notice must be given of the intended change. The real question then is, what is meant by the requisition of the law that notice of the intended change be posted and published? If it be conceded that filing with the commission and in the stations, etc., of the company be a sufficient promulgation and publishing, account must still be taken of the necessity of posting the notice. The popular meaning of the word "post" corresponds with that attached to it by lexicographers. It

means the bringing to the notice or attention of the public by affixing to a post or wall, or putting up in some public place; to placard. This is a usual and efficient method of bringing to the notice of the public matters in which they are interested and there is nothing in the statute which suggests that the term "posted" was used in any other sense than that. It was the means to be adopted to bring to the attention of the public a matter affecting their interests. The notice thus to be given is made a condition precedent to the establishment of an amended tariff. Original schedules are filed without prior notice. The obligation rests on the company to file such schedules but no provision is made for precedent notice of their adoption. But, in the case of changes in the tariff or schedule, thirty days' notice to the commission and the public must be given. It is admitted that there was no posting of notice by the appellant unless the filing of the amended schedule is to be regarded as posting. But when we consider that the words "posted" and "published" are used in connection, with reference to the subject, we are unable to view the language in a light which makes the filing of a paper in the general office of the company and in its stations and car barns the equivalent of posting. The evidence shows that such filing did not have the effect of bringing notice home to the public in the City of Pittsburgh and as the purpose was to provide such notice, it is more reasonable to conclude that the legislature meant what is ordinarily signified by the term used and which was more likely to produce the desired result than would be accomplished by placing the document, which was intended to inform the public, in a desk or in a private office or in some other place in which it could only be seen by the persons interested when specially asked for. Attention is called by the learned counsel for the appellant to the similarity between the Interstate Commerce legislation and the Public Service Statute in regard to adopting and changing

rates, fares and charges. It will be observed, however, that the Interstate Commerce legislation, with respect to changes, requires thirty days' notice to the public "published as aforesaid." The word "posted" is omitted from the amendment of 1910 relating to the subject.

It is true, as pointed out in the appellant's argument, that the requirement of the Interstate Commerce law that schedules should be posted in two public and conspicuous places in every depot, etc., was not made a condition precedent to the establishment and putting in force of the tariff of rates, but was a provision based upon the existence of an established rate, as was decided in Tex. & Pac. R. R. Co. v. Cisco Oil Mill, 204 U. S. 449. And the same ruling was made in Kansas City Southern Ry. Co. v. C. H. Albers Com. Co., 223 U.. S. 573, and in United States v. Miller, 223 U. S. 599. But these decisions dealt with the establishment of the original tariffs. The companies were compelled to adopt schedules. They were also required to post the same in two public and conspicuous places in every depot, but this posting was not made a condition on which the rates became effective. It was a provision based on the existence of an established rate and had for its object the affording of facilities to the public for ascertaining the rates actually in force. In the case last cited attention is called to the distinction between "publication" and "posting," the former consisting in promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined upon the carrier, while the tariff remains operative, as a means of informing the public what are the rates in force. This applies, as will be observed, to existing rates. The distinction is that the company had authority to fix its original rates and file its schedules, but in the case of a change of rate something must be done by the company before it could put the change in effect. That something, is the giving of the notice by

posting and publication of the proposed change, which
notice shall plainly state the exact change proposed to be
made in the tariffs or schedules then in force and whether
an increase or decrease and the time when the proposed
change will go into effect. This is clearly dealing not
with a fact accomplished, but with a proposal of the
company to become an established rate after thirty days.
It is urged, however, that the plan adopted was in ac-
cordance with Tariff Circular No. 4 of the Public Service
Commission. It is unnecessary to consider whether the
provisions of that document are in harmony with the
statute with respect to the manner of posting and pub-
lishing tariffs. It is sufficient to say that that circular
relates to established rates and was apparently intended
to provide a means by which the tariffs and schedules
could be conveniently inspected by the public. It does
not attempt to dispense with the posting and publishing
of notice of the intention to change a rate. It is not to
be expected, nor is it required, that the public be alert to
inquire from day to day at the various places of business
of the company whether a change of rate is in contem-
plation. Information as to existing rates must be sought
after at the prescribed places, but notice of a changed
rate must be brought to the attention of the public by
posting and publishing. A notice in a station, car barn
or other place to which the patrons resort, informing
them that the information as to rates will be furnished
them on request is not, we think, a lawful substitute for
the notice of an intended change of tariff which the law
requires to be posted and published. It is a fair infer-
ence from the evidence that the appellant's officers did
not consider that the standing notice to apply to the com-
pany's employees for information as to tariffs gave gen-
eral information that there was to be a change of rates
of fare, for when the new rate was about to be put into
effect notice was given by advertisements in the city
papers and by conspicuous cards posted in the street

cars, calling attention to the increased rate to be charged within a day or two.

The commission reached the conclusion that the amended tariff, as filed, did not plainly state the exact change proposed to be made and whether such change was an increase or decrease. We do not deem it necessary to enter into a discussion of the evidence on that subject as the first objection to the regularity of the procedure to change the rate is sufficient to support the action of the commission. We hold that the notice of a proposed change of the tariff and schedule was not posted and published as required by the statute; that such posting and publishing was a condition precedent to the taking effect of the changed rate and that the action of the commission in restraining the appellant from putting the new rate into operation was a lawful exercise of authority.

The Superior Court affirmed the order of the Public Service Commission. The Pittsburgh Railways Company appealed.

*Error assigned* was the decree of the court.

*A. W. Robertson, David A. Reed, George E. Shaw* and *Reed, Smith, Shaw & Beal,* for appellant.

*C. A. O'Brien,* City Solicitor, *C. K. Robinson* and *C. Elmer Bown,* for appellees.

*Berne H. Evans,* for the Public Service Commission.

PER CURIAM, January 7, 1918:

These judgments are affirmed on the opinion of the learned Superior Court dismissing the appeals from the decisions of the Public Service Commission.