### Scranton Electric Company *v.* Avoca Borough School District, Appellant.

Argued March 7, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*W. L. Pace,* with him *John R. Reap,* for appellant.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* with him *James P. Harris,* for appellee.

OPINION BY RHODES, J., July 15, 1944:

This appeal involves the right to free electric current from a public utility.

The Scranton Electric Company brought suit in assumpsit to recover for electric current furnished to and accepted by the School District of the Borough of Avoca for six years prior to the institution of suit. Its claim was based upon a contract implied by law and by the regulations of the Public Utility Commission of the Commonwealth of Pennsylvania. Defendant filed an affidavit of defense raising questions of law, which was overruled. A pretrial conference was held at which the issues were defined and certain facts admitted. At the trial defendant offered no evidence, and the trial court directed a verdict in favor of plaintiff. Defendant's motions for judgment n.o.v. and for a new trial were denied. From the judgment defendant has appealed.

The Borough of Avoca, with which defendant school district is coterminous, passed an ordinance in 1897 giving to plaintiff's predecessors certain use of the borough streets. The ordinance provided that in consideration of lighting the town hall and the schools and the use of poles for fire alarm purposes, the borough released the company from any pole tax.[1] In 1933 the borough enacted an ordinance levying a pole and wire tax on plaintiff. Plaintiff has paid this tax.

Defendant has received the service for which suit has been brought, and the prices charged are in accordance with the tariff on file with the Public Utility Commission. Monthly bills have been rendered by plaintiff to

---

[1] The ordinance provides, inter alia, as follows: "Be it further ordained that in consideration of the said A. H. Squier and his associates and such incorporated company as they may form under the laws of the State of Pennsylvania, their successors and assigns, lighting the town hall and the schools and the use of their poles for fire alarm purposes in the Borough of Avoca, Pa., during their contract, the Borough of Avoca does hereby release the said A. H. Squier and his associates and such incorporated company as they may form under the laws of the State of Pennsylvania, their successors and assigns, of the tax on poles."

defendant for the entire period. Defendant has paid nothing for the current received, and refuses to do so; it has no set-off or counter-claim. A copy of the tariff was placed at the office or station of plaintiff in the borough at which consumers or patrons paid their electric bills. There has been no formal contract between plaintiff and defendant for the furnishing of electric current; and there has been no corporate action by defendant in regard to any contract.

Defendant's denial of liability is placed on three grounds. We shall consider them in the order presented.

Defendant first contends that it acquired an indefeasible right to free electric service. In support of this theory it is argued on behalf of defendant that under the ordinance of 1897 plaintiff's predecessors promised to furnish and provide lighting for the schools for the consideration therein named, and that thereby defendant acquired the right to free electric service as a donee beneficiary. It is unnecessary for the purposes of this opinion to consider whether the furnishing of free lighting to the borough and to the schools was a condition upon which the franchise rested, or whether the only consideration was a freedom from the pole tax obliterated by the ordinance of 1933. Even if the ordinance of 1897 could be considered as giving defendant the same rights as would a tripartite contract between the borough, defendant, and plaintiff, defendant's position could not be sustained. Defendant suggests that its rights were of that nature. But, regardless of the source of the alleged rights, the granting of free service to defendant was discriminatory, and a violation of the Public Service Company Law and of the Public Utility Law. Act of July 26, 1913, P. L. 1374, art. 3, §8, 66 PS §262 (repealed); Act of May 28, 1937, P. L. 1053, art. 3, §§303, 304, 66 PS §§1143, 1144; *Vernon Township et al. v. P. S. C.*, 75 Pa. Superior Ct. 54;

*Ben Avon Borough et al. v. Ohio Valley Water Co.,* 75 Pa. Superior Ct. 290, 294, affirmed 271 Pa. 346, 114 A. 369; *Scranton v. P. S. C. (No. 1),* 73 Pa. Superior Ct. 192, affirmed 268 Pa. 192, 110 A. 775; *Borough of White Haven v. P. S. C.,* 80 Pa. Superior Ct. 536, affirmed 278 Pa. 420, 123 A. 772; *Henshaw v. Fayette Gas Co.,* 105 Pa. Superior Ct. 564, 161 A. 896.

Contracts for the service of utilities are presumed to have been made subject to the police power of the state (*Leiper v. Baltimore & Philadelphia R. Co. et al.,* 262 Pa. 328, 105 A. 551; *Scranton v. P. S. C. et al.,* 268 Pa. 192, 110 A. 775; *Suburban Water Co. v. Oakmont Borough,* 268 Pa. 243, 252, 110 A. 778), and it is beyond the power of the contracting parties to fix rates or provide for service permanently. Plaintiff's established rates apply to defendant the same as to other consumers notwithstanding the existence of any contract providing for a different rate or for free service. *Henshaw v. Fayette County Gas Co.,* supra, p. 567. The principle has been definitely and repeatedly stated. The Public Service Company Law and the Public Utility Law supplant any agreement in so far as rates are involved between the consumer and the utility. The change of a rate, by the sovereign power of the Commonwealth, fixed by contract for the performance of service by a public utility company, does not impair the obligation of contract under the Constitution of the United States. "The contract is simply modified or reformed so as to include for the time being the new rate fixed by law": *Suburban Water Co. v. Oakmont Borough,* supra, 268 Pa. 243, at page 254, 110 A. 778, at page 782.

Another contention of defendant is that plaintiff cannot recover in the present case because no action was taken by the board of school directors of defendant school district authorizing the incurring or payment of any indebtedness alleged to be due plaintiff. It is the general rule that where formal action and a written con-

tract are necessary to bind a school district, such requirements must be met in order to predicate liability. But section 403 of the School Code of May 18, 1911, P. L. 309, 24 PS §334, does not apply to the present situation. The Public Service Company Law and the Public Utility Law prevail. The reason for this is fully set forth in *Suburban Water Co. v. Oakmont Borough,* supra, 268 Pa. 243, at page 251, 110 A. 778, at page 780: "It will scarcely be contended a rate fixed for a given quantity of water, or service, is a contract, or that, when a consumer uses it, there is nothing more than a mere bargain and sale at a price fixed according to law. ...... How can a legislatively fixed rate be the subject of 'terms and conditions,' to receive the consent of the local authorities? ...... Rate making by a public service company involves no element of consent by a municipality when made; like any other consumer, it may file a complaint if aggrieved ...... Moreover, when a rate becomes effective, it is a rate established by law. It cannot be varied by the parties, and the company departs therefrom at its peril. Having satisfied every requirement of the act, it has become a collectible, suable rate until it is set aside in the method provided in the act. It is, therefore, for the time being, a legislative rate. It clearly was not the intention ...... to subject such legislative rate to a further revisory control in municipalities in that it must consent, thus tending to destroy the scheme of the act on this subject."

Defendant admittedly received monthly bills during the entire period involved in this suit. It accepted and used the electric current during those years without any complaint whatsoever as to the rates charged or the amount alleged to be due for such services. It is immaterial whether there was or was not a formal contract between plaintiff and defendant. We think plaintiff charged an effective rate in accordance with the

provisions of the law, and that defendant was accordingly liable for the services rendered. See *Brown v. Pa. P. U. C.*, 152 Pa. Superior Ct. 58, 62, 31 A. 2d 435. If there was a contract for the furnishing of service, as defendant contends, then the contract was not abrogated but it was simply modified as to price. *Zeuger Milk Co. v. Pittsburgh School District*, 334 Pa. 277, 280, 5 A. 2d 885. On the other hand, if there were no rights or obligations other than those created by the Public Service Company Law and the Public Utility Law, then the School Code has no application.

The third reason advanced by defendant to demonstrate its nonliability to plaintiff is that plaintiff did not post and publish proper notice of its tariff, and that the tariff offered in evidence did not apply to defendant. The Public Service Company Law of 1913, P. L. 1374, art. 2, §1 (d), 66 PS §41, provided that: "It shall be the duty of every public service company to post and publish such tariffs and schedules ...... in every office or station of said public service company open to the public, where payments are made by ...... consumers, users, or patrons, in such manner, form, and place in such office or station as to be readily accessible, and so that the said tariffs and schedules may be conveniently inspected by the public, and, similarly, in such other places as the commission may require." This section was repealed by the Public Utility Law of 1937, P. L. 1053, §1502. Section 302, 66 PS §1142, of the latter act provides: "Every public utility shall keep copies of such tariffs open to public inspection under such rules and regulations as the commission may prescribe." Plaintiff's tariff was duly filed with the commission, and a copy was conspicuously and accessibly placed at the office or station in the borough of Avoca where consumers or patrons paid their bills. We think the evidence discloses a posting and publishing of such tariff. See "Tariff," art. 1, §2, par. 22, of the Public

Utility Law of 1937, P. L. 1053, 66 PS §1102 (22); *Pittsburgh Rys. Co. v. P. S. C. (No. 1),* 66 Pa. Superior Ct. 243, 251, affirmed 259 Pa. 558, 103 A. 372; *United States v. Miller,* 223 U. S. 599, 604, 56 L. Ed. 568, 570.

We likewise find no merit in defendant's contention that plaintiff cannot recover because there was no applicable tariff governing the rate for lighting and current furnished by plaintiff to defendant. The rate applied was known as rate "J," and was the lowest rate given to any consumer under the tariff in effect. The monthly bills sent to defendant during the entire period contained this rate. Defendant thus had knowledge of the classification and the charge per kilowatt hour. It made no protest concerning the rate, and, as plaintiff points out, does not now make any protest or complaint concerning the rate or the reasonableness of the charges. There was no other rate in the tariff which would give defendant any advantage over the rate on which it was billed.

Finally, defendant questions the admission of evidence to the effect that plaintiff paid the pole tax levied by the borough under the ordinance of 1933. On any view taken, defendant was not harmed by the admission of this evidence.

Judgment is affirmed.