380 A.2d 383

**Harold B. BYER, Sylvia M. Byer, Sherman Pasekoff and Charlotte Pasekoff, on behalf of themselves and on behalf of all other persons similarly situated**

**v.**

**The PEOPLES NATURAL GAS COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1977.

Decided Dec. 2, 1977.

John H. Morgan, Pittsburgh, for appellant.

Richard F. Kronz, Pittsburgh, with him Ronald C. Weingrad, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ.

JACOBS, Judge:

The Peoples Natural Gas Company has appealed from the Order of the lower court dismissing its preliminary objections to appellees' complaint.[1] For the reasons developed below, we remand.

The pertinent facts may be summarized as follows: In October, 1975, appellees commenced this assumpsit action against appellant Peoples by filing a complaint containing three counts.[2] Appellees allege that they are consumers of natural gas who contracted to purchase gas air-conditioning systems from Peoples. It is averred that they were induced to purchase these systems by appellant's promise to provide them with a special gas rate for air-conditioning use from

1. The question below was the jurisdiction of the court over the subject matter and, therefore, is appealable under the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672.

2. Count I seeks relief in favor of plaintiffs-appellees Harold B. and Sylvia M. Byer, Count II seeks relief in favor of plaintiffs-appellees Sherman and Charlotte Pasekoff, and in Count III, these individuals seek relief on behalf of a group of persons that they seek to have established as a plaintiff class.

May 15 to October 15 of each year during the lifetime of the systems. Appellees further aver that appellant supplied them with natural gas at a special rate until 1975, but that since 1975, they have been billed at Peoples' regular rate for residential gas consumption because the special rate was eliminated from the tariff approved by the P.U.C.[3] Appellees, in this action, seek to recover damages for Peoples' failure to complete the exchange of value contemplated by the alleged sales contracts. They request judgment for the amount that they have been and will be required to pay in excess of the alleged special gas rate for the period from May 15 to October 15, 1975, and from May 15 to October 15 of each subsequent year during the lifetime of their gas air-conditioning systems.

Peoples filed preliminary objections to appellees' complaint raising, *inter alia*, the issue of jurisdiction.[4] This appeal followed the lower court's order of February 23, 1976, dismissing Peoples' preliminary objections.

Appellant's position is that the P.U.C. has exclusive jurisdiction over the matters raised in appellees' complaint. "The legislature has provided an exclusive method for questioning the propriety of any rate charged by a public utility for service rendered in its public utility capacity, and that method is by complaint to the P.U.C." Appellant's Brief at 20. This assertion is based on appellant's belief that the essential issue in the case is a question of the *rate* that it may lawfully charge for the sale of natural gas; appellant

3. Peoples contends that its tariffs, effective at the time these sales contracts allegedly were executed, provided for an "ACS" rate for gas used for air-conditioning purposes during the period beginning May 16 and ending October 15 of each year. Since 1975, however, Peoples' effective tariffs have not included the "ACS" rate or any other rate applicable only to natural gas used for air-conditioning purposes. Peoples argues that the changes in its rates, including the elimination of the "ACS" rate from its tariffs, were effected in accordance with procedures prescribed by the P.U.C.

4. Other preliminary objections included a demurrer based both upon the parol evidence rule and upon the ground that plaintiffs are pleading an illegal and void contract, and a petition to refuse to certify this action as a class action.

characterizes this action as an attempt by appellees to recover refunds for the exaction of an allegedly unlawful or unreasonable rate.

To substantiate its contentions, appellant points to a number of sections in the Public Utility Law which set forth specific limitations upon the rates that can be charged by public utilities. Section 301 of the Public Utility Law provides: "Every rate made, demanded, or received by any public utility . . . shall be just and reasonable, and in conformity with regulations or orders of the commission . . . ." Act of May 28, 1937, P.L. 1053, § 301, *as amended*, 66 P.S. § 1141. Public utilities are directed to file tariffs with the P.U.C. showing all the rates established by them and to be collected or enforced,[5] and they cannot demand or receive, directly or indirectly, greater or lesser rates than those specified in their tariffs.[6] Discrimination in rates is expressly proscribed.[7]

Moreover, the P.U.C. is authorized, upon its own motion or upon complaint, to determine the lawfulness of any existing public utility rate; if, after reasonable notice and hearing, the P.U.C. finds that an existing rate is "unjust, unreasonable, or in anywise in violation of any provision of law," it is empowered to fix by order the just and reasonable rate to thereafter be charged.[8] Section 313 establishes a specific procedure for obtaining any refunds that a public utility might owe as the result of an adverse determination by the P.U.C. on a question of rates.[9] Significantly, the Public Utility Law mandates that: "No action shall be brought in any court for a refund, unless and until the commission shall have determined that the rate in question was unjust or unreasonable, or in violation of any regulation or order of

5. Act of May 28, 1937, P.L. 1053, § 302, 66 P.S. § 1142.

6. Act of May 28, 1937, P.L. 1053, § 303, 66 P.S. § 1143.

7. Act of May 28, 1937, P.L. 1053, § 304, 66 P.S. § 1144.

8. Act of May 28, 1937, P.L. 1053, § 309, 66 P.S. § 1149.

9. Act of May 28, 1937, P.L. 1053, § 313, *as amended*, 66 P.S. § 1153 (Supp. 1977–78).

the commission, or in excess of the applicable rate contained in an existing and effective tariff, and then only to recover such refunds as may have been awarded and directed to be paid by the commission in such order." Act of May 28, 1937, P.L. 1053, § 313, 66 P.S. § 1153(c).

From the foregoing statutory provisions, and on the basis of a number of appellate decisions delineating the jurisdiction of the P.U.C. when questions concerning utility rates are raised, appellant contends that appellees' claims clearly must be heard in the first instance by the P.U.C. rather than the Court of Common Pleas. It is with this contention, however, that we disagree.

■ "[N]o principle has been more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC." *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, 650, 170 A.2d 565, 566–67 (1961). It cannot be disputed that exclusive jurisdiction over the rates charged by public utilities rests with the P.U.C. The Courts of Common Pleas, therefore, have no jurisdiction to determine the lawfulness or reasonableness of rates established by public utilities; these questions must be decided in the first instance exclusively by the P.U.C. See *East Hempfield Township v. Lancaster*, 441 Pa. 406, 273 A.2d 333 (1971); *Einhorn v. Philadelphia Electric Company*, 410 Pa. 630, 190 A.2d 569 (1963).

■ Moreover, the P.U.C.'s jurisdiction over utility rates exists regardless of whether those rates have been established by deed, contract, ordinance or otherwise. See *Blythe Township Municipal Authority v. P.U.C.*, 199 Pa.Super. 334, 185 A.2d 628 (1962) and cases therein cited. The rule of exclusive P.U.C. jurisdiction over utility rates is not affected by the nature of the agreement between the utility and its customers. This principle has been definitely and repeatedly stated.

■ Peoples' established rates apply to appellees the same as to other consumers of natural gas. It is well-settled that

a public utility cannot make a special contract with a customer; it can only charge the lawful rate as tariffed. *West Penn Power Company v. Nationwide Mutual Insurance Company,* 209 Pa.Super. 509, 228 A.2d 218 (1967). The Public Utility Law supplants any agreement between the consumer and a utility insofar as rates are involved. *Blythe Township Municipal Authority v. P.U.C.,* supra; *Scranton Electric Company v. Avoca Borough School District,* 155 Pa.Super. 270, 37 A.2d 725 (1944). As this Court stated in *Scranton Electric Company v. Avoca School District,* supra, "[c]ontracts for the service of utilities are presumed to have been made subject to the police power of the state (citations omitted), and it is beyond the power of the contracting parties to fix rates or provide for service permanently." *Id.* 155 Pa.Super. at 274, 37 A.2d at 727.

We agree with appellant that the nature of a claim dealing with utility rates cannot be disguised by labeling it a contract claim, so as to bypass the refund procedure of the Public Utility Law. If the case below is a challenge to Peoples' rates, it must be heard initially by the P.U.C. However, if appellees concede the lawfulness and reasonableness of appellant's rates and only seek damages for Peoples' failure to fulfill its promises in connection with the sale of gas air-conditioning units, the case is within the jurisdiction of the Court of Common Pleas. *See Behrend v. Bell Telephone Company,* 242 Pa.Super. 47, 363 A.2d 1152 (1976).

Unfortunately, we do not have the benefit of an opinion from the lower court, and the record is far from clear. Appellees filed affidavits in the court below denying receipt of notice of the discontinuance of the special gas rate [10] and asked, in their complaint, for judgment measured by the difference between the rate they paid and the rate they allegedly were promised. These facts seem to indicate an attack on the rates charged by Peoples although appellees, in their brief, say they are not questioning the new tariff.

**10.** *But see* note 3 supra.

The case, therefore, is remanded to the lower court with instructions to determine appellees' cause of action. If appellees are attacking the validity of appellant's tariff or asking for a refund of an illegally charged rate, the lower court is directed to transfer the case to the P.U.C. for a determination of those questions. If, however, appellees concede on the record that they are not attacking the tariff or seeking a refund of an illegally charged rate, but are claiming only breach of contract in connection with the sale of gas air-conditioning units, the lower court shall continue jurisdiction of the case.

Accordingly, the case is remanded to the lower court for proceedings consistent with this opinion.

VAN der VOORT, J., did not participate in the consideration or decision of this case.