**Pettko v. Pennsylvania-American Water Company**

C.P. of Washington County, no. 2010-2126.

*Stephen J. Del Sole* and *Patrick K. Cavanaugh,* for plaintiffs.
*Roy W. Arnold* and *Donna M. Doblick,* for defendant.

O'DELL SENECA, *P.J.,* August 27, 2010—Presently before the court are the defendant's preliminary objections to the amended complaint. For the reasons set forth herein, this court shall sustain the preliminary objections and transfer this action to the Public Utility Commission.

The plaintiff, C. Leslie Pettko has filed a putative class action[1] against the defendant, Pennsylvania American Water Company (PAWC), alleging that PAWC billed rate increases for the distribution system improvement charge (DSIC) and state tax adjustment surcharge (STAS) prior to the effective date set by the Public Utility Comission (PUC). See plaintiff's memorandum of law at p. 5. For example, Pettko's billing cycle ran from June 18, 2009 to July 16, 2009, and the DSIC rate increase was effective July 1, 2009. See plaintiff's amended complaint ¶¶30-32. Pettko claims that he was billed the increased DSIC rate throughout the above billing cycle; in other words, that rate increase was not pro-rated. *Id.* at ¶¶31 and 33. In addition, PAWC did not pro-rate the October DSIC rate increase. *Id.* at ¶¶34-35. Pettko alleges that PAWC failed to

---

1. As the representative plaintiff, all references to Pettko necessarily refer to the class, which is comprised of 2,000,000 customers in 370 communities across 36 counties. See plaintiff's amended complaint ¶¶8-10.

pro-rate the STAS over the billing cycle which straddled its effective date, being January 1, 2010. *Id.* at ¶¶37-40. PAWC is also accused of improperly rounding Pettko's bill not to the nearest cent, but instead upwards to the next cent. *Id.* at ¶¶41-46. To use Pettko's example, PAWC is supposedly rounding a charge of $1.001 upwards to reflect a billed amount of $1.01. *Id.* at ¶41. In light of these alleged deceptive billing practices, Pettko maintains that PAWC has violated the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1—201-9.3 et seq., (UTPCPL) breached their contract, and committed the tort of conversion. See *id.* and plaintiff's memorandum of law at p. 5.

The standard of review for preliminary objections is well-established:

"In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. *Sheffield v. Department of Corrections,* 894 A.2d 836 (Pa. Commw. 2006). Preliminary objections will be sustained only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Id.* We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Myers v. Ridge,* 712 A.2d 791 (Pa. Commw. 1998)." *Richardson v. Beard,* 942 A.2d 911, 913 (Pa. Commw. 2008).

Further, when preliminary objections "raise a question of subject matter jurisdiction, '[t]he trial court's function is to determine whether the law will bar recovery due to a lack of subject matter jurisdiction." *Mazur v. Trinity Area School District,* 926 A2d 1260, 1265 n.5 (Pa.

Commw. 2007); (quoting *Kimmel Township Taxpayers Association v. Claysburg Kimmel School District,* 146 Pa. Commw. 57, 62, 604 A.2d 1149, 1152 (1992)).

PAWC makes a simple argument in support of their preliminary objections—that primary and exclusive jurisdiction of Pettko's allegations lies with the PUC and not the court of common pleas, as these claims encompass PAWC's rates and billing practices. Pettko responds that his allegations do not implicate the regulatory authority of the PUC; but, rather, are cumulative to the remedies of the Public Utility Code.

Under the Public Utility Code, the General Assembly has vested the PUC with supervisory and regulatory power and authority over all public utilities doing business within our Commonwealth. 66 Pa.C.S. §501(b). As a result, "[i]t is well-settled law that initial jurisdiction over matters involving the reasonableness, adequacy or sufficiency of a public utility's service, facilities or rates is vested in the PUC and not in the courts." *Morrow v. Bell Telephone Company of Pennsylvania,* 330 Pa. Super. 276, 280, 479 A.2d 548, 550 (1984) (quoting *DeFrancesco v. Western Pennsylvania Water Co.,* 291 Pa. Super. 152, 156, 435 A.2d 614, 616 (1981)). "No principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC." *Einhorn v. Philadelphia Electric Company,* 410 Pa. 630, 634, 190 A.2d 569, 571 (1963) (quoting *Lansdale Borough v. Philadelphia Electric Company,* 403 Pa. 647, 650, 170 A.2d 565, 566-67 (1961). The PUC is responsible for regulating utility rates and evaluating proposed tariffs; therefore, "it has particular expertise over such matters." *Springfield Township v. Pennsylvania Public Utility Commission,* 676

A.2d 304, 308 (Pa. Commw. 1996) (citing *Optimum Image Inc. v. Philadelphia Electric Co.,* 410 Pa. Super. 475, 600 A.2d 553 (1991). The code broadly defines "rate" as follows:

"Every individual, or joint fare, toll, charge, rental, or other compensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded, or received for any service within this part, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, *and any rules, regulations, practices, classifications or contracts affecting any such* compensation, *charge,* fare, toll, or rental." 66 Pa.C.S. §102. (emphasis supplied)

The courts of our Commonwealth have had previous occasion to address primary jurisdiction over matters involving claims against a public utility:

"The doctrine of primary jurisdiction requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Our Supreme Court stated in *Elkin* that the doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special experience and expertise in complex areas with which judges and juries have little familiarity. Another important consideration is the need to promote consistency and uniformity in certain areas of administrative policy. Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litiga-

tion may continue, guided in scope and direction by the nature and outcome of the agency determination." *Poorbaugh v. Pennsylvania Public Utility Commission,* 666 A.2d 744, 749 (Pa. Commw. 1995) (citing *Elkin v. Bell Telephone Company,* 491 Pa. 123, 133-34, 420 A.2d 371, 376-77, (1980)). (internal citations omitted)

To begin, this court "must look to the essence of the underlying claims, rather than to magic words, in determining where jurisdiction properly lies." *Id.* at 750 (citing *DeFrancesco v. Western Pennsylvania Water Company,* 499 Pa. 374, 378 n.5, 453 A.2d 595, 597 n.5 (1982)). The amended complaint is replete with references to PAWC's billing practices. Pettko alleges that his bill was "artificially inflated" by PAWC's rounding practices. Plaintiff's amended complaint ¶45. He also challenges the way in which the DSIC and STAS were applied, labeling it as "pervasive overbilling" and "pervasively employing billing practices" to require customers to pay increased amounts. *Id.* at ¶48(a)–(j); see also, ¶59. Additionally, Pettko maintains that PAWC falsely represented that its billed rates were accurate and authorized; thereby, inducing justifiable reliance on the part of Pettko. *Id.* at ¶¶50-52, 68. Simply put, Pettko's claims arise from what he alleges are billing practices contrary to that set forth by the PUC. The issue, then, is whether those allegations may, or should, be heard by this court.

Pettko argues that the code does not nullify other existing common law or statutory causes of action:

"Remedies cumulative. Except as otherwise provided in this party, nothing in this part shall abridge or alter the existing rights of action or remedies in equity or under common or statutory law of this Commonwealth, and

the provisions of this part shall be cumulative and in addition to such rights of action and remedies." 66 Pa.C.S. §103(c).

In conjunction with this statutory language, Pettko also relies on *Byer v. Peoples National Gas Company,* 251 Pa. Super. 75, 380 A.2d 383 (1977) to support jurisdiction in this court. This reliance is misplaced.

In *Byer,* the plaintiff averred that the utility induced them to acquire certain air-conditioning systems in exchange for a special gas rate for air conditioning; however, that discount was eliminated by the PUC in a new tariff. The plaintiff sought damages amounting to the difference between the discounted rate and the higher PUC rate. In reviewing the trial court's overruling of the defendant's preliminary objections, the Superior Court stated that "if [the plaintiff] concede[s] the lawfulness and reasonableness of appellant's rates and only seek damages for [the defendant's] failure to fulfill its promises in connection with the sale of air-conditioning units, the case is within the jurisdiction of court of common pleas." *Id.* at 81, 380 A.2d at 386 ( citing *Behrend v. Bell Telephone Company,* 242 Pa. Super. 47, 363 A.2d 1152 (1976)).

Pettko treats this statement as a talisman, seeking to ward off the PUC's jurisdiction behind it. However, *Byer* is readily distinguishable from the instant matter. This case does not involve the sale of gas-powered air conditioners; rather, it involves allegations that PAWC billed its customers in violation of the PUC's effective dates and unjustly or unreasonably raised its charges through improper practices Nor does this case involve a private contract between a utility and customer for lower rates

than allowable by the PUC's tariff. But perhaps more importantly, and fatal to Pettko, is the Superior Court's admonishment, in *Byer,* that "the nature of a claim dealing with utility rates cannot be disguised by labeling it a contract claim, so as to bypass the refund procedure of the Public Utility Law." *Id.* at 81, 380 A.2d at1386. The Superior Court then remanded the action, because the record was so unclear, and specifically directed the lower court to transfer the case to the PUC if it found the plaintiff was "asking for a refund of an illegally charged rate." *Id.* at 82, 380 A.2d at 387.

Section 1312 of the code sets forth the general rule in seeking refunds:

"If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection . . . together with interest at the legal rate from the date of such excessive payment. [. . .]" 66 Pa.C.S. §1312(a).

Thus, the plain language of section 1312 dictates that issues regarding excessive or improper rates shall be for the PUC to determine, and not the court of common pleas. See *Springfield Township,* 676 A.2d at 307 ("Section 1312 of the code, 66 Pa.C.S. §1312, authorizes PUC to order a public utility to refund the rates which were (1)

unlawful, (2) unjust or unreasonable, or (3) in excess of the rates contained in the public utility's tariff.").

This reading is also support by the Superior Court's decision in *Morrow v. Bell Telephone Company of Pennsylvania,* 330 Pa. Super. 276, 479 A.2d 548 (1984). There, the plaintiff filed two civil actions against the telephone company arising out of their practices concerning charges for toll calls during non-business hours. One action was in equity and sought class certification; the second action claimed individual damages for tortious and/or contractual wrongs alleged committed by the telephone company. The trial court dismissed the equity action as within the jurisdiction of the PUC and the Superior Court affirmed:

"[Plaintiff's] equity action was a challenge [defendant's] rates and to its service practices. Rates and practices regarding deposits are peculiarly and exclusively within the jurisdiction and expertise of the public utility commission. Therefore, they must be addressed to that body. Although [plaintiff's] complaint contains averments of breach of contract, these averments are but a cover disguising the real thrust of his complaint, which is to challenge the adequacy and propriety of Bell's rates and service practices.

"If Bell engaged in any illegal practices, the public utility commission has the power and authority to order such practices terminated and discontinued. 66 Pa.C.S. §501. The public utility commission also has the authority to order Bell to make refunds of excessive charges, if any, which may have been levied against Bell's customers. 66 Pa.C.S. §1312. Because the administrative remedies are adequate to remedy any wrong which ap-

pellant may have sustained, 'the case is exclusively within the PUC's jurisdiction and no recourse to the courts, outside the normal appellate process, is warranted.'" *Id.* at 281-82, 429 A.2d at 551. (footnote omitted) (internal citations omitted)

Therefore, like the plaintiff in *Morrow,* Pettko has a remedy for any alleged excessive or improper billing by PAWC; he can institute and seek a refund action before the commission pursuant to section 1312. See also, 66 Pa.C.S. §1308(c) (permitting commission to fix any unjust or unreasonable rate by order). Nor can Pettko escape the jurisdiction of the PUC by artfully "framing the allegations in contractual and/or trespassory terminology, and demanding damages." *DiSanto v. Dauphin Consolidated Water Supply Company,* 291 Pa. Super. 440, 450, 436 A.2d 197, 202 (1981) (citing *Elkin,* 491 Pa. at 130, 420 A.2d at 375). Furthermore, the implementation of charges, rates, or surcharges set by the PUC is a matter best suited to the expertise of the commission, which initially approved same. See *County of Erie v. Verizon North Inc.,* 879 A.2d 357 (Pa. Commw. 2005) (upholding trial court finding that PUC had primary jurisdiction over claim that Verizon incorrectly billed, collected, and remitted the 911 contribution rate to Erie County). Accordingly, primary jurisdiction for this action lies with the PUC.

The finding that the PUC has primary jurisdiction, however, does not end the inquiry. This court must now determine whether the PUC's jurisdiction is exclusive, *i.e.,* if the code provides Pettko an administrative remedy that is "adequate and complete." *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 7, 383 A.2d 791, 793-94 (1977);

*DiSanto,* 291 Pa. Super. at 450, 436 A.2d at 202 (1981). If same is not adequate or complete, the PUC's jurisdiction is not exclusive and an action for damages lies with the court of common pleas, based upon the PUC's "initial determination of the matters within its realm of expertise." *DiSanto,* 291 Pa. Super. at 450, 436 A.2d at 202; see also, *Poorbaugh,* 666 A.2d at 749; (citing *Elkin, supra*) (discussing bifurcated procedure when PUC does not have exclusive jurisdiction). Moreover, it is axiomatic that as a "creature of statute, [the PUC] has only those powers which are expressly conferred upon it by the legislature and those powers which arise by necessary implication." *Feingold, supra* (citing *Allegheny County Port Authority v. Pa. P.U.C.,* 427 Pa. 562, 237 A.2d 602 (1967) and *Delaware River Port Authority v. Pa. P.U.C.,* 393 Pa. 639, 145 A.2d 172 (1958)).

Here, Pettko, if successful in his complaint before the commission, can be made whole regardless of the specific allegations or prayers for relief contained in his complaint. Under section 1312, assuming the commission finds PAWC's actions and/or billings to be unreasonable, unjust, or excessive, it can order PAWC to pay a refund of the excessive rates charged plus interest to Pettko and thereby make him whole. *DiSanto,* 291 Pa. Super. at 450, 436 A.2d at 202; 66 Pa.C.S. §1312. Additionally, the PUC may direct PAWC to terminate any illegal practices. 66 Pa.C.S. §501. It is true that a successful claim under the UTPCPL, which Pettko has pled, could potentially lead (if proven) to the imposition of exemplary or treble damages. 72 P.S. §201-9.2(a). Such damages, if awarded, would go beyond making Pettko whole and serve additional remedial purposes. *Schwartz*

*v. Rockey,* 593 Pa. 536, 557, 932 A.2d 885, 898 (2007). However, this is not the question posed by a question of the PUC's exclusive jurisdiction. The only question to be answered is whether the aforementioned remedies are adequate and complete This court is constrained to find so because "these remedies are more than adequate to make [Pettko] whole, the case is exclusively within the PUC's jurisdiction and no recourse to the courts, outside the normal appellate process is warranted." *DiSanto,* 291 Pa. Super. at 450, 436 A.2d at 202.

Accordingly, this court enters the following:

## ORDER

AND NOW, August 27 2010, upon consideration of the defendant's, Pennsylvania American Water Company, preliminary objections to the first amended complaint and the response thereto, it is hereby ordered, adjudged, and decreed that same are sustained for lack of jurisdiction and the above-captioned matter shall be transferred to the Public Utility Commission for disposition pursuant to 42 Pa.C.S. §5103(a).