576 A.2d 407

**STATE COLLEGE MANOR, LTD., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 30, 1990.

Decided June 1, 1990.

Reargument and Reconsideration Denied June 28, 1990.

344

Thomas C. Fox, with him, Sheree R. Kanner, Cara C. Bachenheimer and Mary E. Giblin, Pierson, Ball & Dowd, and Charles O. Barto, Jr., Charles O. Barto, Jr. and Associates, for petitioner.

William D. Lenahan, Asst. Counsel, for respondent.

Clifford B. Levin, Levin, Scott & Mitinger, for intervenor, Mellon Bank, NA.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before us are State College Manor, Ltd.'s (Petitioner's), Mellon Bank N.A.'s (Mellon's) and the Department of Public Welfare's (Department's) motions for summary judgment. Additionally, the Department filed a Motion to Quash Intervenor's (Mellon's) Second Motion for Summary Judgment and brief in support. We grant Petitioner's and Mellon's motions for summary judgment and deny that of the Department. Additionally, we deny the Department's Motion to Quash.

The Department established interim medicaid reimbursement rates for services provided by Petitioner for various reimbursement periods during 1981–1985. Petitioner challenged the proposed rate adjustments. However, Petitioner and the Department entered into a stipulation and agreement (agreement) on March 4, 1985.

The agreement provided that (1) Petitioner was entitled to higher amounts of depreciation and interest on its medicaid interim rates for skilled nursing facility and intermediate facility care, effective August 1, 1984; (2) Petitioner was entitled to retroactive payments for the higher revised amounts; (3) the interest and depreciation portions of Petitioner's rates were not subject to any ceiling or other payment limitations and should not be decreased by any interim or final rate adjustment until a hearing was held and a decision reached by the Office of Hearings and

Appeals (OHA); (4) in the event there was a breach by the Department, then the interim rate adjustments under appeal by Petitioner would be dismissed with prejudice and the Department would be estopped from making such adjustments to Petitioner's rates.

Alleging failure by the Department to abide by the agreement's terms and to pay certain amounts owed to Petitioner retroactively, Petitioner filed a motion to dismiss the Department's proposed actions and adjustment rates. The hearing examiner recommended that Petitioner's motion to dismiss be granted and the OHA adopted his recommendation in its entirety in a July 10, 1986 order. The Department did not appeal the OHA's decision to this Court.

Eventually, Petitioner requested that the Department make payments totaling $478,039.54; $78,068.42 under the agreement and $404,971.12 under the OHA's order. When the Department refused, Petitioner filed a Petition for Review or in the Alternative for Enforcement and Prohibition with this Court. After preliminary objections, we determined that the matter was properly within our original jurisdiction and dismissed that portion of the petition purporting to be in our appellate jurisdiction. Since the time that the suit was first initiated in this Court, the Department tendered $345,067.58 to Petitioner, $132,971.96 less than the requested amount.

On February 26, 1990, Mellon successfully intervened as trustee for the bondholders who financed the facility and as the senior secured interest. At the status/settlement conference of that date, the parties agreed that no material issue of fact existed and that the case could be decided on the principles involving a motion for summary judgment.

There are several issues before us as to the motions for summary judgment.[1] The first is whether the agreement precludes further litigation as to the basis for both interim

---

1. Summary judgment may be granted when there is no genuine issue as to any material fact, a party is entitled to judgment as a matter of law and the case is very clear. *William J. Heck Builders, Inc. v. Martin,* 315 Pa.Superior Ct. 395, 462 A.2d 253 (1983).

and final reimbursement rates. The second is whether the Department is collaterally estopped from relitigating the issue of what method and procedure should be used to calculate depreciation and interest for reimbursement. The final issue is whether the method of calculation set forth in the agreement must be followed for the period during which Petitioner operated the facility because the Department's reimbursement regulations mandate that the method for calculating depreciation be applied consistently.

When interpreting a contract, we must consider the entire instrument and give effect to all provisions. *Argeros and Co., Inc. v. Department of Transportation,* 67 Pa.Commonwealth Ct. 531, 447 A.2d 1065 (1982). We must construe it as per the plain meaning of the contract's language. *Id.* The intent of the parties must be determined and we must adopt an interpretation which describes the most logical, reasonable, probable and natural conduct of the parties. *Walton v. Philadelphia National Bank,* 376 Pa.Superior Ct. 329, 545 A.2d 1383 (1988).

In his affidavit, Mr. Joseph Dionisio of Price Waterhouse (PW) set forth the method by which Petitioner calculated the amount of interest expense reimbursement to be included in its interim and final rate calculation. As per paragraph 6 of the March 4, 1985 agreement,[2] the Department was to respond to Mr. Dionisio's affidavit within thirty days of the above date. It failed to do so.

As a result, it seems logical, reasonable and probable that the Department realized that by failing to respond, it waived any right to do so at a later date. Similarly, it

**2.** Paragraph 6 of the agreement reads as follows:
Within the same time frame discussed in paragraph 5, DPW shall respond to the affidavit of Joseph D. Dionisio of Price Waterhouse, which affidavit is also fully applicable to the consolidated case, specifying those paragraphs within the affidavit with which DPW agrees or disagrees, and the nature and extent of that disagreement. DPW will also provide us with the reasons for such disagreement and the cites to the relevant legal authority or authorities on which it bases that disagreement. DPW shall also identify all documents and witnesses (with a short summary of the expected testimony) that support DPW's position.

seems sensible to conclude that Petitioner intended either to have the Department accept PW's method of calculation once and for all, or to have it provide reasons and authorities for disagreeing with the same.

Because the Department did not respond to the affidavit and the OHA's order affirmed the application of the agreement and found that the Department defaulted, we hold that (1) the Department is thereby "estopped from making such adjustment to Petitioner's medicaid rates for skilled nursing facility and intermediate facility care," [3] and (2) it is precluded from further litigation as to the basis for both interim and final reimbursement rates by its failure to respond as per paragraph 6 of the agreement.

As to the second issue, the requirements of collateral estoppel are that the issue that has been already determined by a final judgment be (1) identical; (2) actually litigated; (3) essential to the judgment; and (4) material. *Department of Public Welfare v. Divine Providence Hospital*, 101 Pa.Commonwealth Ct. 248, 516 A.2d 82 (1986), *appeal dismissed* 518 Pa. 591, 544 A.2d 1323 (1988). Here, the method to be used in order to calculate depreciation for reimbursement is the identical issue.

That issue was "actually litigated" before the OHA when it dismissed the Department's rate adjustments with prejudice. The Department failed to appeal that July 10, 1986 order before this Court. As one of the primary issues of the agreement, certainly the method and procedure to be used to calculate the depreciation for reimbursement rates was essential to the judgment and material to the adjudication. Thus, the Department is estopped from relitigating that issue before this Court.

3. Paragraph 8 of the agreement reads as follows:
   In the event DPW fails to satisfy any of the requirements set forth in paragraphs 1–7 above, DPW's Medicaid interim rate adjustments under appeal by the Petitioner for the periods indicated above, will be dismissed with prejudice, and DPW shall be estopped from making such adjustments to Petitioner's Medicaid rates for skilled nursing facility and intermediate facility care.

In regards to the third issue, the consistency of a calculation method, the Department's own regulation provides:

> (g) the method and procedure, including the assigned useful lives, for computing depreciation shall be applied from year-to-year on a *consistent* basis.

55 Pa.Code § 1181, 259(g) (emphasis added).

As noted by Mellon on page 16 of its Brief in Support of Motion for Summary Judgment, the Department cited the aforementioned regulation in a prior case before this Court involving alternative methods for calculating allowable depreciation cost. In the case of *Grandview Health Homes v. Department of Public Welfare*, 122 Pa.Commonwealth Ct. 356, 552 A.2d 720 (1988), the Department argued that the useful asset lives assigned by a prior owner, contrary to those assigned by the new owner, should be used. We agreed.

Just as the new owner of a facility is bound by the previous owner's assigned useful asset lives, so is the Department, in this specific case, bound by the unchallenged method and procedure set forth in the arms length agreement. The Department entered the agreement with full knowledge that it had thirty days in which to contest the affidavit of PW's Mr. Dionisio, which contained the procedure by which Petitioner arrived at its reimbursement rates. We agree that the Department may not adopt a method inconsistent with the one it failed to refute.

As for the Department's Motion to Quash Intervenor's (Mellon's) Second Motion for Summary Judgment, based on an alleged mix-up in filing requirements, we find no merit therein and hereby deny it.

For these reasons, we hereby grant Petitioner's and Mellon's Motions for Summary Judgment, deny the Department's Motion for Summary Judgment and its Motion to Quash.

## ORDER

AND NOW, this 1st day of June, 1990, we hereby grant Mellon Bank N.A.'s and State College Manor, Ltd.'s Mo-

tions for Summary Judgment, deny the Department of Public Welfare's Motion for Summary Judgment and its Motion to Quash.

Former President Judge CRUMLISH, Jr., did not participate in the decision in this case.