436 A.2d 197

**Alex A. DiSANTO**

v.

**DAUPHIN CONSOLIDATED WATER SUPPLY COMPANY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed Oct. 9, 1981.

442

Michael W. Gang, Harrisburg, for appellant.

Gary M. Lightman, Harrisburg, for appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

Dauphin Consolidated Water Supply Company [hereinafter Dauphin] takes this appeal from the lower court's dismissal of its preliminary objections to appellee DiSanto's complaint. Through its preliminary objections, Dauphin challenged the subject matter jurisdiction of the court of common pleas to hear this controversy. An interlocutory appeal was taken as of right under the former Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672 (1953) which was expressly repealed by the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1069] effective June 27, 1980.[1] The

---

1. The Rules of Appellate Procedure no longer allow interlocutory appeals as of right in cases where subject matter jurisdiction is upheld by the lower court. *See* Pa.R.A.P. 311(b) and note thereto

sole question presented in this appeal, therefore, is whether the court of common pleas below properly exercised its subject matter jurisdiction over this controversy.

The facts of this case which have been properly pleaded are as follows: DiSanto is a real estate developer who has in the past engaged the services of Dauphin, a public utility in the business of supplying water service to the public. In the course of its business, Dauphin also secures the services of certain "approved" independent contractors to install water mains and water service lines in order to supply water to its customers.

On May 10, 1977, DiSanto contacted Dauphin and requested the latter to provide water service at his Woodridge Estates development. Dauphin agreed to provide the requested service and gave DiSanto a price of $29,471.00 for the installation of a water main and forty-nine customer service lines. DiSanto then obtained an estimate from an outside contractor to perform the same work for $17,875.00. Dauphin, however, refused DiSanto's request that this outside contractor be permitted to install the required water facilities for the lower price. Since Dauphin would not supply water over lines installed by DiSanto's contractor, DiSanto paid the sum of $29,471.00 to Dauphin on May 10, 1977 in order to have the lines installed.

DiSanto then instituted this equity action by filing a complaint with the Court of Common Pleas of Dauphin

(effective 120 days after December 23, 1978). Such cases will now be handled as interlocutory appeals by permission pursuant to Pa.R. A.P. 312.

The Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 1722(a) provides that "[a]ll statutes shall be suspended to the extent that they are inconsistent with rules prescribed under this paragraph." Since Rule 311(b) is inconsistent with former statute 12 P.S. § 672, the statute was suspended as of the effective date of the rule which was promulgated pursuant to the Judicial Code. The delayed repeal of section 672 by the Judiciary Act Repealer Act expressly rescinded what was already impliedly suspended.

The new procedure under Rule 311(b), therefore, took effect on April 22, 1979 and the appeal in the instant case was taken on April 17, 1979. Thus, we conclude that the interlocutory appeal as of right in the instant case was proper under the former procedure.

County seeking both compensatory and punitive damages as well as injunctive relief. Dauphin timely filed preliminary objections asserting that the complaint questioned the reasonableness of the conditions required by a public utility for the extension of service. On this basis, Dauphin contends that the Pennsylvania Public Utility Commission has initial or primary jurisdiction over such controversies, and that DiSanto has, therefore, failed to exhaust his available administrative remedies before bringing the matter into the courts.

■ The lower court judge overruled Dauphin's preliminary objections by order dated March 19, 1979. His reasoning for doing so, as set out in his Memorandum Opinion dated August 16, 1979, was that this case is "a contractual dispute involving a public utility . . . and a private citizen." Citing *Leveto v. National Fuel Gas Distrib.*, 243 Pa.Super. 510, 366 A.2d 270 (1976), he concluded that the courts, rather than the PUC, have jurisdiction to adjudicate the claim presented. This interlocutory appeal followed.

■ In *Allport Water Auth. et al. v. Winburne Water Co.*, 258 Pa.Super. 555, 393 A.2d 673 (1978), the Court summarized the law with regard to the jurisdictional boundaries between the PUC and the courts:

We start with the principle "that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not the courts." *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, 650, 170 A.2d 565, 567 (1961). See also *Chester County v. Philadelphia Electric Company*, 420 Pa. 422, 218 A.2d 331 (1966); *Einhorn v. Philadelphia Electric Company*, 410 Pa. 630, 190 A.2d 569 (1963); *Fogelsville & T. Electric Company v. Pa. P. & L. Company*, 271 Pa. 237, 114 A. 822 (1921); *Byer v. Peoples Natural Gas Company*, 251 Pa.Super. 75, 380 A.2d 383 (1977); *Bell Telephone Company v. Sanner*, 248 Pa.Super. 273, 375 A.2d 93 (1977); *Elkin v. Bell Telephone Company*, 247 Pa.Super. 505, 372 A.2d 1203 (1977). Thus, it has long

been recognized that the reasonableness, adequacy and sufficiency of public utility service are all matters within the exclusive original jurisdiction of the PUC. See *Duquesne Light Company v. Monroeville Borough*, 449 Pa. 573, 298 A.2d 252 (1972); *Behrend v. Bell Telephone Company*, 431 Pa. 63, 243 A.2d 346 (1968); *Elkin v. Bell Telephone Company*, supra. It is equally well-settled, however, that the PUC is not jurisdictionally empowered to decide private contractual disputes between a citizen and a utility. See *Byer v. Peoples Natural Gas Company*, supra; *Leveto v. National Fuel Gas Distribution Corporation*, 243 Pa.Super. 510, 366 A.2d 270 (1976); *Reading & Southwestern Street Railway Company v. Pennsylvania PUC*, 168 Pa.Super. 61, 77 A.2d 102 (1950).

*Id.,* 258 Pa.Super. at 558–559, 393 A.2d at 674–675. *See also* Public Utility Law, Act of May 28, 1937, P.L. 1053, art. IV, § 401, 66 P.S. § 1171 (1959) now Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116, § 1, 66 Pa.C.S. § 1501 (1980).

"The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." *Behrend v. Bell Telephone*, 242 Pa.Super. 47, 59, 363 A.2d 1152, 1158 (1976) (citation and footnote omitted) *vacated and remanded on other grounds* 473 P. 320, 374 A.2d 536 (1977). As we stated in *Bell Telephone Co., of Pennsylvania v. Sanner*, 248 Pa.Super. 273, 276, 375 A.2d 93 (1977) (per curiam), however, the question of the reasonableness or adequacy of Bell's service was not before the court in *Behrend.* "When a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC initially to determine whether the service provided by the utility has fallen short of the statutory standard required of it." *Id.,* 248 Pa.Super. at 277, 375 A.2d at 95 (footnote omitted). Thus, this writer posited in *Leveto, supra* : "While it is true that certain aspects of a utility's contracts are regulated by the Public Utility Law, the act

does not grant the PUC general supervisory power over contracts." 243 Pa.Super. at 519, 366 A.2d at 275 (citation omitted).

■ As the foregoing survey of case law indicates, and, indeed, mandates, the precise question to be considered in this appeal is whether the facts of this case involve issues, be they contractual or not, concerning the reasonableness, adequacy and sufficiency of public utility service in which case the matter is within the initial jurisdiction of the Pennsylvania Public Utility Commission, or whether the facts of this case constitute only a private contractual dispute between a utility and a citizen concerning non-service related matters over which a court of general jurisdiction is empowered to act. Dauphin contends that this case is within the primary or initial jurisdiction of the PUC because DiSanto's purported contractual dispute is in essence a complaint concerning Dauphin's policy of requiring that the installation of water service lines be done by its own approved contractors. Since this requirement was a condition of extending water service, Dauphin takes the position that the installation agreement is inextricably interwoven with the reasonableness of Dauphin's methods of providing utility service to the public—a consideration which is uniquely within the province of the PUC. We agree. For the reasons discussed below, we conclude the issue of whether a water company may rightfully require that the installation of public utility facilities must be performed by its approved contractor rather than by a developer himself or a contractor employed by a developer is one which must be decided initially by the Pennsylvania Public Utility Commission.

The Public Utility law provides that:

§ 1171. Character of service and facilities.

Every public utility shall furnish and maintain adequate, efficient, safe, and *reasonable service and facilities*, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such *service and facilities* as shall be necessary or proper for the accommodation, convenience, and safety of its patrons,

employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such *service and facilities* shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this act and the regulations or orders of the commission, *every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service.*

66 P.S. § 1171 (now 66 Pa.C.S. § 1501) (emphasis added). Moreover, the definitional part of the act states that the term "service" is "[u]sed in its broadest and most inclusive sense [and] includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and *any and all facilities used,* furnished or supplied *by public utilities* . . . *in the performance of their duties* under this part to their patrons, employees, other public utilities, and the public." *Id.* at § 1102(20) (now 66 Pa.C.S. § 102) (emphasis added). *See also Behrend v. Bell Telephone of Pa.,* 431 Pa. 63, 65, 243 A.2d 346, 347 (1968) (decided before Title 66 was consolidated; language remains virtually the same). Also, the term "facilities" as defined in the act "means all the plant and equipment of a public utility including *all* tangible and intangible real and *personal property without limitation,* and *any and all* means and *instrumentalities in any manner* owned, operated, leased, licensed, *used,* controlled, *furnished or supplied for, by, or in connection with, the business of any public utility* . . ." 66 P.S. § 1102(10) (now 66 Pa.C.S. § 102). Therefore, in *Lansdale Boro. v. Phila. Electric Co.,* 403 Pa. 647, 650, 170 A.2d 565, 566–567 (1961), our Supreme Court stated that the PUC has initial jurisdiction over matters involving the installation of utility facilities. Likewise, in *Overlook Development Co. v. Public Service Commission,* 101 Pa.Super. 217, 158 A. 869, aff'd per curiam 306 Pa. 43, 158 A. 869 at 873 (1932), this Court, dealing with an earlier version of the act, held that a privately constructed water main became a "facility" immediately upon its utilization by a public utility.

The act also contains the following provisions with respect to "rates":

§ 1141. Rates to be just and reasonable.

Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly shall be just and reasonable, and in conformity with regulations or orders of the commission.

66 P.S. § 1141 (now Pa.C.S. § 1301).

Under the act, the term "rate" is defined as encompassing "*every* individual, or joint fare, toll, *charge*, rental, *or other compensation whatsoever of any public utility* . . . *made*, demanded, or received *for any service within this act*, offered, rendered, or furnished by such public utility . . . *and any* rules, *regulations, practices*, classifications *or contracts affecting any such compensation*, charge, fare, toll, or rental." 66 P.S. § 1102(19) (now 66 Pa.C.S. § 102). Therefore, our Supreme Court, in determining the reasonableness of an electric utility's charge for the installation of underground service lines, stated in *Einhorn v. Phila. Electric Co.*, 410 Pa. 630, 634, 190 A. 569 (1963) that "[b]oth the Public Utility Law and the decisions of this Court, with unmistakable clarity, require that questions dealing with excessive charges be decided in the first instance exclusively by the Commission." Moreover, questions concerning the rates charged for the installation of utility facilities are the type of matters which should be included in a "tariff" filed with the PUC under 66 P.S. § 1142 (now 66 Pa.C.S. § 1302).[2] These tariffs then have the force and effect of law. *See* 66 P.S. § 1143 (now 66 Pa.C.S. § 1303) (adherence to tariffs required); *Behrend v. Bell Telephone Company*, 242 Pa.Super. at 70, 363 A.2d at 1165 (tariffs "filed under authority of law, have the force of law and their reasonableness is to be determined by the Public Utility Commission").

**2.** In *Simmons v. West Penn Power Company*, —— PUC —— (c-77090013, January 4, 1979), the Pennsylvania Public Utility Commission determined that West Penn's policy of requiring complainants to pay $220.00 for trenching work that could have been done for $75.00 was a reasonable regulation due to various circumstances. However, the Commission concluded that the rate for this service should have been tariffed. Since there was no tariff with respect to this charge, the Commission ordered a refund and ordered further that West Penn cease and desist making charges for the installation of underground service facilities until a tariff has been filed.

The act, as quoted above, therefore, envisions that the PUC has jurisdiction over matters relating to the reasonableness of a utility's services, facilities and rates, as well as over matters concerning the utility's formation of reasonable rules and regulations governing the conditions under which service, facilities and rates shall be rendered, constructed or imposed. Instantly, the water lines would be used by Dauphin in the performance of its duties as a public utility, and the requirement of using Dauphin's approved contractor to install the water lines was stated as a condition to the supplying of water service. In addition, the installation charge imposed by Dauphin in the course of its public utility business is a "rate" under the terms of the act. Thus, the questions at the core of this controversy deal with (1) the reasonableness of the utility's policy requiring that facilities be constructed only by certain contractors approved by the utility; (2) the reasonableness of making adherence to this policy a condition to providing utility service; and (3) the reasonableness of the rates imposed for the construction of the utility facilities. Conversely, as we stated in *Allport*, "[a]lthough appellees would have us hold otherwise, the instant case does not simply involve a breach of contract." 258 Pa.Super. at 561, 393 A.2d at 676. We, therefore, conclude that this matter should initially be heard by the PUC instead of by the courts.

DiSanto contends that *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977) requires a contrary result. We cannot agree. In *Allport* we noted that "the scope of that decision is distinctly delimited. Our Supreme Court recognized that Feingold's claims merely raised questions involving the utility's performance of its *contractual* or *tort law obligations* owed to Feingold." 258 Pa.Super. at 563, 393 A.2d at 677 (emphasis added). Nevertheless, DiSanto contends that *Feingold* ousts the PUC of jurisdiction to act because the instant case involves an action for damages. This argument has been recently refuted by our Supreme Court in *Elkin v. Bell Telephone Co. of Pennsylvania*, 491 Pa. 123, 130, 420 A.2d 371, 375 (1980) where Justice Larsen

stated that this "interpretation of Feingold is too broad and would 'virtually strip' the PUC of all jurisdiction merely by framing the allegations in contractual and/or trespassory terminology, and demanding damages."

■ Having already determined that the instant case involves matters within the normal sphere of the PUC, we must now decide whether the PUC's jurisdiction is exclusive or whether the bifurcated procedure adopted by *Elkin* should be followed in the instant case. Such a determination, however, is dependent upon the adequacy of the administrative remedies available to the appellee through the PUC. If the available administrative remedies are complete and adequate to make the complainant whole, then the PUC has exclusive jurisdiction over the controversy and there is no recourse to the courts outside of the normal channels of appeal to the Commonwealth Court. However, where the administrative remedies are not adequate and complete, the PUC's jurisdiction is not exclusive and an action for damages may be brought in a court of common pleas based upon the PUC's initial determination of the matters within its realm of expertise.[3] *See Loy v. West Penn. Water Co.,* 291 Pa.Super. 152, 435 A.2d 614 (1981). *See also Elkin* and *Allport, supra.*

In the case at bar, DiSanto can be made whole by the PUC regardless of the specific allegations and prayers for relief contained in his complaint. The Commissioner will initially determine the reasonableness of Dauphin's actions, and if DiSanto prevails in this regard, the Commission can vary and reform the contract for the installation of facilities under 66 P.S. § 1360 (now 66 Pa.C.S. § 508), determine the just and reasonable rate to be charged under 66 P.S. § 1148(c) (now 66 Pa.C.S. § 1308(c)), order Dauphin to pay a refund of the excessive rates charged plus interest under 66

---

**3.** Obviously, if the case did not involve the reasonableness or adequacy of services, facilities or rates, then the case would not go to the PUC at all, but rather, it would go directly to the courts. *See e. g., Feingold,* 477 Pa. at 11 n.7, 383 A.2d at 796 n.7 and *Behrend,* 242 Pa.Super. at 59, 363 A.2d at 1158. *Accord Allport,* 258 Pa.Super. at 563, 393 A.2d at 677.

P.S. § 1153 (now 66 Pa.C.S. § 1312), and order Dauphin to discontinue its practice of requiring that its own contractors install water service lines instead of other capable independent contractors who agree to install the lines according to required specifications, and further, to cease making adherence to this practice a condition to the providing of utility service under 66 P.S. §§ 1183 and 1342, (now 66 Pa.C.S. §§ 1505 and 501 respectively). Since these administrative remedies are more than adequate to make DiSanto whole, the case is exclusively within the PUC's jurisdiction and no recourse to the courts, outside of the normal appellate process, is warranted.

The order of the court below sustaining jurisdiction is reversed, Dauphin's preliminary objections are granted, and the case is transferred to the PUC without prejudice to the rights of either party with respect to procedures before that tribunal.