**LIBORIO II, L.P., a Delaware limited partnership, and Lenape Development, Inc., a Delaware corporation, and Liborio III, L.P., a Delaware limited partnership, Plaintiffs,**

**v.**

**ARTESIAN WATER COMPANY, INC. a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: March 5, 1990.
Decided: October 4, 1990.

L. Vincent Ramunno of Ramunno & Ramunno, for plaintiffs.

Richard J. Abrams of Richards, Layton & Finger, for defendant.

## OPINION

HERLIHY, Judge.

This is an action for damages that arose from a series of transactions between the plaintiffs Liborio II, L.P., Lenape Development, Inc. and Liborio III, L.P., developers of properties known as Bella Vista, Belle Terre, and Buena Vista Park, and the defendant Artesian Water Company, Inc. [Artesian], a regulated public water utility. Artesian has moved to dismiss the amended complaint. Its motion has been converted to a motion for summary judgment. For the reasons stated herein, this action is STAYED.

## I

The original complaint in this matter was filed by plaintiffs Liborio II, L.P. and Lenape Development, Inc., on August 14, 1989. Artesian filed its answer on September 14, 1989. Subsequently, an amended complaint was filed on September 26, 1989 adding plaintiff Liborio III, L.P.

Before discussing the allegations contained in the complaint, a review of the background of this case is necessary to understand plaintiffs' case.

In April 1984, plaintiff Liborio II, L.P. and Artesian entered into a memorandum of agreement concerning the construction of two off-site mains. These mains were to provide water service for the development of what was then known as Innisfail East and the Innisfail West developments. Subsequently, these developments became known as Bella Vista and Belle Terre, respectively. The memorandum indicated that the developer would have to pay no more than $170,000 to Artesian for the construction of the two off-site water mains. On September 5, 1984, Liborio and Artesian entered into Artesian's standard form water service agreement for Phase I of Innisfail East, now Bella Vista. This agreement provided for both off-site and on-site water facilities. It is noted that the cost for the on-site water work was not estimated at that time. Subsequently, a similar water service agreement was entered into on July 11, 1986. This agreement was in regard to on-site water mains and fire hydrants for Phase II of Bella Vista.

At the time of the September 1984 agreement, Liborio made an advance contribution of $70,000 for the estimated cost of the first off-site main. The actual cost of the first off-site main was only $57,983.65. Subsequently, on December 30, 1986, Liborio made another advance contribution in the amount of $113,000 bringing the total contribution as of January 1, 1987 to $170,983.64. Defendant subsequently determined that Liborio's second advance contribution should only have been $112,016.35 and, thus, Artesian refunded $983.65 to Liborio.

In March 1988, the second off-site main was completed and the actual construction cost for the two off-site mains was $20,799.24 below the estimated $170,000. Artesian returned that excess amount to Liborio.

Between the time of the April 1984 agreement and the completion of the two off-site mains, a major change in the federal tax laws took place pursuant to the Tax Reform Act of 1986. Effective January 1, 1987, advance contributions from developers to water companies for construction of water service facilities would now be re-

portable as income. *See* I.R.C. § 118(b). Pursuant to this tax law change, Artesian and other water utilities began to add the estimated cost of the tax liability to the amount of the advance contributions. This was done to avoid the tax cost being passed on to the customers of the utilities.

On November 20, 1986, Artesian sent out a letter to various contractors and developers, including plaintiffs. This letter, referring to the changes in the Tax Reform Act of 1986, indicated that developers could avoid the additional tax costs for bona fide planned projects to be completed by December 31, 1988, by making deposits on the contracts for such projects to Artesian prior to year-end 1986. It was in response to this letter that Liborio made the payment of $113,000 to Artesian on December 30, 1986 referred to earlier.

In March 1988, Artesian tendered to plaintiff Lenape Development, Inc. (an affiliate of Liborio, II, L.P.) a water service agreement for the on-site interior water system for the Belle Terre (formerly Innisfail West) development project. This agreement provided for the payment of taxes by the developer. The amount, 66 percent, was based upon a calculation including what is referred to as the tax on a tax, which is meant to reflect the actual tax due. This tax on a tax is necessary because the amount of money contributed by another for the payment of taxes is also subject to taxation.

This tax payment assessment to developers and builders was apparently the standard practice of the public water companies in Delaware. In March 1987, the Public Service Commission [PSC], in response to complaints from residential developers concerning this passed-through utility income tax liability, initiated a general rule-making proceeding, PSC Regulation Docket No. 15, to consider the developers' complaints. The PSC appointed a hearing examiner who, after proper notice to the public at large and direct notice to interested parties, conducted a hearing on August 20, 1987, and also accepted written submissions from certain parties and subsequently issued his findings and recommendations. The PSC held its hearing on December 8, 1987. Artesian participated in these hearings, as did the Home Builders Association [Association]. None of the plaintiffs is a member of the Association.

On March 15, 1988, the PSC issued Findings and Order No. 2928 [PSC Order 2928]. In this order, the PSC rejected the hearing examiner's recommendation that the tax expense portion of advances be subject to a deduction equal to the present value of tax benefits which would flow to the utility in the future from the transaction. This deduction would result in the utility having to contribute some of the initial tax payment. Instead, the PSC adopted a method that would require the advance to include the entire tax amount unadjusted for tax benefits accruing to the utility. This was the method supported by all of the participating utilities and the PSC staff.

The amended complaint contains five counts.[1] In Count I, plaintiffs allege that Artesian applied a payment solicited by it in a manner contrary to plaintiffs' intention, costing plaintiffs $74,580 in taxes for which they were not liable. Plaintiffs allege that this misapplication of the solicited payment caused plaintiffs' costs to increase as to later work done by Artesian because of tax payments that had to be made by the plaintiffs. In a similar vein, Count II alleges that an amount refunded to plaintiffs should have been applied to so-called on-site work. Plaintiffs allege that because the amount was refunded, plaintiffs were caused to expend additional funds for taxes, $13,727.50, for which plaintiffs are not liable.

Counts III and V allege that Artesian, through its interpretation of the Tax Reform Act of 1986, has charged the plaintiffs an excessive and unreasonable amount for water service. The plaintiffs allege that charging 66 percent as a tax payment exceeds the actual taxes of Artesian by 26 percent and unreasonably increases the cost of the homes in the plaintiffs' developments. Plaintiffs claim Artesian was un-

---

1. Artesian did not answer paragraph 10 of the complaint containing Count V.

justly enriched by the extra 26 percent and plaintiffs should be reimbursed for it. Count IV does not independently state any claim for damages.

In its answer, Artesian in essence asserts that as to Counts I and II, the cost charged to plaintiffs did not exceed the amount agreed to in the April 1984 agreement relating to the two off-site mains. As to the remaining counts, Artesian asserts that the tax calculation is proper and is, in fact, the required method pursuant to the terms of PSC Order No. 2928.

Defendant asserts six affirmative defenses: (1) this Court lacks jurisdiction because the PSC has exclusive jurisdiction; (2) plaintiffs' complaint is barred because they did not exhaust their administrative remedies before the PSC; (3) plaintiffs are estopped from this action because they did not pursue their remedies before the PSC during the rule-making process; (4) the plaintiffs are members of the Association, were represented during the rule-making process and are now collaterally estopped; (5) plaintiffs seek judicial review of the PSC's rule beyond the appeal time provided by the Administrative Procedures Act; and (6) plaintiffs failed to join the PSC which is a necessary party and plaintiffs' suit should be dismissed for this failure.

Oral argument was held on Artesian's motion to dismiss and its motion to stay discovery.[2] The Court ordered further briefing on the dismissal motion and stayed all discovery requests.

## II

While Artesian asserts six grounds for dismissal or summary judgment, the Court finds it necessary to address only three.

### A

Defendant's first two grounds for dismissal, that the PSC has exclusive jurisdiction of this controversy and that plaintiffs did not exhaust their administrative remedies,

are the same concept and, if applied here, achieve the same result, namely dismissal.

There is, however, a related doctrine known as primary jurisdiction but its application results in a stay of the action, not dismissal. The two doctrines are often confused. 2 Am.Jur.2d, *Administrative Law* § 798 (1962). While Artesian has not argued this latter doctrine, the Court finds it appropriate to also analyze this case in light of that doctrine.

These doctrines have been described:

[t]he doctrine of ... exhaustion of administrative remedies ... being applicable to situations where a proceeding to enforce a claim must be initiated before an administrative agency and then reviewed by the courts. The doctrine of primary jurisdiction, on the other hand, comes into play when a claim is originally cognizable in a court of law or equity but referral to an agency competent to rule preliminarily on issues which fall within its regulatory powers is authorized. In such situations, proceedings before a court are merely suspended pending referral of appropriate issues to such an administrative body.

*Webb v. Diamond State Tel. Co.*, Del.Ch., 237 A.2d 143, 145 (1967).

However, before deciding which doctrine is more appropriate, the Court must determine whether either doctrine should be applied. In other words, have plaintiffs invoked the jurisdiction of this Court or is their action more appropriately to be considered by the PSC?

Plaintiffs have characterized their action as one for breach of contract and for unjust enrichment. These are actions within the traditional jurisdiction of this Court. *See Columbian Fuel Corp. v. Superior Court*, Del.Supr., 158 A.2d 478, 485 (1960); *Artesian Water Co. v. Cynwyd Club Apartments, Inc.*, Del.Super., 297 A.2d 387 (1972). However, the Court is not bound by plaintiffs' labels nor do Artesian's assertions of lack of jurisdiction control the disposition of this matter. The Court must

**2.** Plaintiffs were seeking discovery of Artesian's tax records in an attempt to show it paid less tax than the 66 percent it collected from plaintiffs.

Basically, Artesian admits that it paid less tax than the 66 percent collected.

look behind these contentions, examine the gravamen of plaintiffs' action and determine whether there is a claim within the province of the PSC or the authority of this Court. *See DeFrancesco v. W. Pennsylvania Water Co.,* 499 Pa. 374, 453 A.2d 595, 597 (1982); *Morrow v. Bell Tel. Co. of Pennsylvania,* 330 Pa.Super. 276, 479 A.2d 548, 550 (1984).

### B

■ In Counts I and II, plaintiffs seek damages for alleged breach of contracts. They claim they were required to expend money for taxes for which they were not liable had Artesian adhered to the contracts. However, the confusing and incomplete record of this case would appear to indicate that Artesian performed the services required of it under the contracts. What remains unclear is whether plaintiffs suffered damages because of Artesian's application of funds that plaintiffs paid to it, which application was not consistent with the contract. Where there is a need to more fully develop the facts and the law applicable to those facts, summary judgment is inappropriate. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 469 (1962). Therefore, as to Counts I and II, Artesian's motion for summary judgment is DENIED.

### C

■ In Counts III and V, plaintiffs claim Artesian has been unjustly enriched because it collected a 66 percent tax payment on plaintiffs' advances for costs, when its liability was really only 40 percent of such costs. The record of this case at this juncture shows that Artesian collected the 66 percent payment pursuant to PSC Order 2928.

Therefore, it is manifest that plaintiffs are attacking the reasonableness of a rate established by the PSC. In their brief, plaintiffs accuse the PSC of approving "an unconscionable 66 percent tax", of displaying "one-sided logic", and of allowing Artesian to gouge plaintiffs, etc. The determination of the unjustness or unreasonableness of a rate charged by a regulated utility is the subject matter of an appropriate regulatory agency. *Spintman v. Chesapeake and Potomac Tel. Co. of Md.,* 254 Md. 423, 255 A.2d 304, 307 (1969); *see also DiSanto v. Dauphin Consol. Water Supply Co.,* 291 Pa.Super. 440, 436 A.2d 197 (1981).

The *DiSanto* case has some striking similarities to this dispute. Plaintiff, a developer, contracted with Dauphin Water Company to provide water service to a new 49–unit housing development. Dauphin charged a certain price but DiSanto was quoted a lower price by another contractor. Dauphin refused to allow DiSanto's contractor do the work at the lower price. While Dauphin was not relying upon a rule of the Pennsylvania Public Utility Commission, the court in *DiSanto* found that plaintiff was attacking the reasonableness of the service being provided and that plaintiff's remedy was exclusively within the jurisdiction of the PUC and not the courts.

The Delaware PSC has "exclusive original supervision and regulation of all public utilities and also over their rates...." 26 *Del.C.* § 201(a). Defendant is a public utility. 26 *Del.C.* § 102(2). The PSC is empowered to change rates which it determines are unjust or unreasonable. 26 *Del.C.* § 309(a). It has the power to fix just and reasonable rates. 26 *Del.C.* § 311. If necessary, a person may sue to recover a refund where the PSC has determined a public utility rate is excessive. 26 *Del.C.* § 312.

In this particular instance in PSC Order No. 2928 at 11, the PSC stated:

E. The Commission reserves jurisdiction and authority to enter such further Orders in this matter as may be deemed necessary and proper.

It is unclear by this language whether the PSC meant to reserve jurisdiction to hear a grievance that the 66 percent payment creates an unjust enrichment or is excessive. In any event, the PSC is empowered to hear plaintiffs' complaint of reasonableness and, if deemed appropriate, to remedy it. The policy and financial issues raised by plaintiffs and Artesian are uniquely within the expertise and jurisdiction of the PSC.

In effect, since the Court finds that the PSC has exclusive jurisdiction over plaintiffs' contentions contained in Counts III and V of their complaint, the application of the doctrine of exclusive jurisdiction would initially be the appropriate approach to take. This would lead to dismissal of those counts. However, there are several considerations which militate against dismissal.

First, the Court has denied Artesian's motion for summary judgment on Counts I and II. The extra tax liability plaintiffs claim they were forced to pay, but for which they were not liable, may really be another attack on the 66 percent tax payment and not a loss for damages as a result of any breach of contract. While the Court has denied Artesian's motion on those two counts, the Court will stay any further action on those counts in this Court in order to allow the PSC to explore whether plaintiffs were charged unnecessary or unjust rates by Artesian. Naturally, the PSC has no jurisdiction to consider a breach of contract action. Because plaintiffs' claim may actually be for breach of contract in Counts I and II, the Court can do no more than stay the action before it in order to seek preliminary consideration of issues cognizable by the PSC. *Webb,* 237 A.2d at 145; *Eastern Shore Natural Gas Co. v. Stauffer Chem. Co.,* Del.Supr., 298 A.2d 322, 325 (1972).

Further, a stay is appropriate because plaintiffs have used, unwisely, intemperate language in describing PSC Order No. 2928. It is important that plaintiffs not be penalized for that misstep.

### III

The next reason a stay of this matter, rather than dismissal, is more appropriate is because of the third defense raised by Artesian. It argues that plaintiffs are collaterally estopped from attacking PSC Order 2928 because plaintiffs are, or were at the time of the rule-making process, members of the Association. Plaintiffs were not nor did they appear anywhere during that rule-making process. Further, the record is incomplete about whether plaintiffs' arguments were litigated before the PSC. In light of these considerations, it is not clear that collateral estoppel is applicable.

### IV

Artesian further contends plaintiffs did not timely pursue their remedies before the PSC, that is, during the rulemaking process. It argues that plaintiffs did not timely appeal PSC Order 2928 once promulgated in that no appeal to this Court was lodged in 30 days. 29 *Del.C.* § 10141. The plaintiffs' ability to now contest the reasonableness of Artesian's rate does not itself invoke the PSC's rule-making exertise. Because of the PSC's reservation of jurisdiction, these arguments as to timeliness should first be addressed by the PSC.

Therefore, as to Counts I and II, Artesian's motion for summary judgment is DENIED. Defendant's motion to stay discovery on those counts is GRANTED. Plaintiffs' motion to compel is STAYED. The balance of the proceeding is STAYED to allow plaintiffs to initiate before the PSC an appropriate proceeding to raise the issues raised by all parties herein, as to all counts in plaintiffs' complaint properly within the jurisdiction of the PSC. Such action by plaintiffs shall be undertaken within thirty days of this Order. In the event plaintiffs fail to initiate such a proceeding, Artesian shall promptly bring that failure to the attention of the Court.