601 A.2d 1359

**Alfred George GRANT and Geraldine Patricia Grant, his wife, Appellants,**

v.

**SOUTHWESTERN PENNSYLVANIA WATER AUTHORITY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1991.

Decided Jan. 9, 1992.

Joseph M. George, for appellants.

Barbara Ann Mohajery, for appellee.

Before CRAIG, President Judge, BYER, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Alfred George Grant and Geraldine Patricia Grant, husband and wife, (Grants), appeal from the order of the Court of Common Pleas of Greene County which denied their request for injunctive relief. The relief the Grants seek would require Southwestern Pennsylvania Water Authority (Authority) to supply water to the Grants' property at a rate specified in a 1908 agreement.

The Grants base their claim on the 1908 agreement which was entered into by the predecessors-in-title of both parties. The Grants and the Authority stipulated to the agreement and acknowledged that as assignees they are bound by the agreement. The agreement states in pertinent part that:

For and in consideration of, Six Hundred Dollars to us in hand paid, receipt of which is hereby acknowledged, Aar-

on J. Hibbs and Margaret A. Hibbs, his wife, do hereby grant to H.C. Frick Coke Company, its successors or assigns, the right of way to lay, maintain, operate and remove, a pipe line for the transportation of water, on, over, and through their lands situate in Redstone Township, Fayette County, State of Pennsylvania.... Said Company agrees to furnish water to said Aaron J. Hibbs, his heirs and assigns for domestic and farm purposes at the rate of twenty-five cents per thousand gallons as long as said line is used for transportation of water.

Plaintiff's Exhibit A.

The present controversy arose in 1986 when the Grants installed a mobile home on their property as a residence for their son. Water was provided to the mobile home via a hook-up to the main water line which services the farm house, the barn and other structures on the premises. The Authority notified the Grants that their water service would be terminated unless the water line to the mobile home was disconnected. The Authority maintained that more than one line servicing the premises of a customer from a single meter violated the Authority's rules and regulations.

After hearing, the trial court ordered that metered service was to be provided to the mobile home at the Authority's rate. Post-trial relief was denied and the Grants appealed to this Court requesting that the Authority be required to continue to supply water to the structures on the property including the mobile home at the reduced rate in accordance with the agreement.[1]

■ According to the arguments presented by the parties, it at first appears that the issue before this Court is one of contract interpretation. Since this function is one that is a question of law, it is well within the province of this Court to decide. *Department of Transportation v.*

1. Pursuant to the Judicial Code, 42 Pa.C.S. § 762, the Commonwealth Court does not have jurisdiction in this matter. However, in the interest of judicial economy and in light of the Authority's failure to file an objection to jurisdiction, we will proceed with our determination. See Pa.R.A.P. 741(a).

*Mosites Construction Co.,* 90 Pa.Commonwealth Ct. 33, 494 A.2d 41 (1985).

 When interpreting a contract, we must review and consider the entire instrument giving effect to all provisions. *State College Manor, Ltd. v. Department of Public Welfare,* 133 Pa. Commonwealth Ct. 343, 576 A.2d 407 *appeal dismissed,* 525 Pa. 263, 579 A.2d 1294 (1990). The contract must be construed according to the plain meaning of the contract's language. *Id.* We must determine the intent of the parties and must adopt an interpretation which delineates the most logical, reasonable, probable and natural conduct of the parties. *Id.*

Neither party argues that the language of the contract is ambiguous. However, both give a different interpretation to the pivotal sentence that is at the heart of this controversy. This critical sentence states that "[s]aid Company agrees to furnish water to said Aaron J. Hibbs, his heirs and assigns for domestic and farm purposes at the rate of twenty-five cents per thousand gallons as long as said line is used for transportation of water." We note that:

> A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

*State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa.Commonwealth Ct. 246, 251, 430 A.2d 328, 330 (1981).

The Authority argues that the original parties to the agreement contemplated that the twenty-five cent rate would be granted to the Hibbs for the use of water in their residence and other buildings on the premises which were used by the Hibbs for their domestic and farm purposes. The Authority further argues that the special rate was not to be extended to persons other than Aaron J. Hibbs, his heirs and assigns.

The Grants contend that the language of the agreement indicates that the special rate applies to the premises for

domestic and farm purposes and includes any type of residence situated on the property even though it may be leased. The Grants also argue that the evidence provided at trial showing the circumstances that have existed over the years are the same as those that exist today. It was established that as many as four residences situated on the property were supplied with water at the special rate. Furthermore, only one meter has controlled and measured the water flow to the property. Lastly, the Grants contend that the agreement did not contemplate that water would only be supplied to and consumed by the Grants for their own domestic and farm purposes.

In addition to complaining that the trial court incorrectly ordered that the mobile home should be separately charged according to the Authority's present water rate, the Grants also argued that the regulations instituted by the Authority subsequent to the execution of the contract cannot invalidate the provisions of the legally enforceable contract. Case law does not support this contention. It is well settled that:

> the Public Utility Commission has jurisdiction over the price charged for utility services regardless of whether that price has been established by a deed, a contract, ordinance, or otherwise. These cases are based upon the proposition that individuals cannot, by contract, abridge the police powers of the Commonwealth which protect the general welfare and the public interest. This proposition is well stated in *Leiper v. Baltimore and Philadelphia Railroad Company*, 262 Pa. 328, 332, 105 A. 551, 553 [1918], wherein the Supreme Court said:
>
> 'Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the "general well-being of the State," the rights of the individuals must give way to the general welfare. It therefore follows that when, as in this case, the parties enter into a contract with a public service corporation relating to rates, they are presumed to have done so with the knowledge that the right of the State to exercise this

police power in the future is expressly reserved, and that where the common weal and the interests of the public demand that the provisions of the contract thus entered into shall be modified, it can be done without any violation of the provision of the Constitution of the United States with reference to the impairment of the obligation of contracts.'

We have held this principle applicable in cases where the disputed rate is established by a deed covenant running with the land.

*Blythe Township Municipal Authority v. Pennsylvania Public Utility Commission,* 199 Pa.Superior Ct. 334, 339–40, 185 A.2d 628, 631 (1962).

■ This principle has been applied in a more recent case, *Brockway Glass Co. v. Pennsylvania Public Utility Commission,* 63 Pa.Commonwealth Ct. 238, 437 A.2d 1067 (1981), where our Court stated that the latest published tariff is the only lawful rate and in the absence of an exception,[2] a public utility may not charge for its services according to any other rate. The *Brockway* court indicated that it is beyond the power of the contracting parties to fix rates or provide for services permanently. Furthermore, the Public Utility Code (Code), 66 Pa.C.S. §§ 101–3315, displaces any agreement concerning rates between the consumer and the utility. Specifically, Section 1303 of the Code, 66 Pa.C.S. § 1303, provides in pertinent part that:

No public utility shall, directly or indirectly, by any device whatsoever, or in any ways, demand or receive from any person, corporation, or municipal corporation a greater or less rate for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto.

■ Accordingly, the Grant's argument concerning the contract interpretation is of no moment. However, we note that the only rate at issue here concerns the rate that the

**2.** An example of such an exception is set forth in the Public Utility Commission's provisions to give preference to persons who can demonstrate that a medical emergency exists allowing for special arrangements for the payment for services.

Authority may charge for water service to the mobile home. The Authority has not sought to deny the special rate to the Grants for their own domestic and farm purposes. Therefore, we conclude that the trial court's order allowing the Grants to be charged at the special rate and the mobile home to be charged at the rate prescribed by the Authority's current tariff must be affirmed.

BYER, J., dissents.

This decision was reached before the conclusion of Judge Byer's service.

## ORDER

AND NOW, this 9th day of January, 1992, the order of the Court of Common Pleas of Greene County in the above-captioned matter is hereby affirmed.