**INTERNATIONAL LAND ACQUISITIONS, INC., Plaintiff,**

v.

**PENNSYLVANIA AMERICAN WATER COMPANY, Nick O. Rowe, John Hildabrant, Jr., and Bruce E. Juergens, Defendants.**

**Civil No. 3:CV–95–1919.**

United States District Court, M.D. Pennsylvania.

May 13, 1997.

Nicholas A. Clemente, Philadelphia, PA, for plaintiff.

Antonio F. Dias, LeBoeuf, Lamb, Greene & MacRae, Pittsburgh, PA, for defendants.

## MEMORANDUM

NEALON, District Judge.

International Land Acquisitions, Inc. (International) filed this complaint pursuant to 28 U.S.C. § 1332 on November 16, 1995, alleging that Pennsylvania American Water Company (PAWC) breached its contract with Plaintiff when PAWC, in 1995, would not provide water and sewer service to International's proposed land development unless International paid for substantial improvements. Plaintiff seeks monetary damages contending that it was unable to accomplish the development because of PAWC's refusal to provide the services requested. PAWC filed a Motion for Summary Judgment on November 18, 1996, to which International responded and filed a Cross–Motion for Summary Judgment on November 27, 1996. Both motions have been briefed and are ripe for determination. For the following reasons, Defendant's motion will be granted, as amended, and Plaintiff's motion will be denied, and the case will be referred to the Pennsylvania Public Utility Commission (PUC) with jurisdiction being retained by this Court.

### Procedural Background

As previously noted, International, a Delaware corporation authorized to conduct business in Pennsylvania, filed this civil action on November 16, 1995, pursuant to 28 U.S.C. § 1332, alleging a breach of contract by PAWC, a Pennsylvania corporation. On Oc-

tober 3, 1996, PAWC sought to serve a third-party complaint upon Country Place Water Company, Inc. and Country Place Waste Treatment Company, Inc.[1] Discovery in this matter having been completed, PAWC, on November 18, 1996, filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 with a supporting brief and documents. On November 27, 1996, International filed a Cross–Motion for Summary Judgment and a brief in support, together with a brief in opposition to PAWC's Motion for Summary Judgment. PAWC filed a reply brief in support of its motion together with a brief in opposition to International's cross-motion on December 12, 1996. On January 15, 1997, an oral argument was held at which time the parties were directed to file supplemental briefs on certain issues, including whether the PUC had exclusive jurisdiction over this matter. On January 29, 1997, International filed supplemental briefs in support of its Cross–Motion for Summary Judgment and in opposition to PAWC's Motion for Summary Judgment. PAWC filed a reply to International's supplemental motion in support on February 6, 1997. Furthermore, PAWC, on January 30, 1997, filed supplemental briefs in support of its motion and in opposition to International's cross-motion, with International filing a reply to the supplemental brief in support on February 10, 1997.

### Facts

International is a corporation involved in the business of land development and Donald Kessler is the sole shareholder. Kessler, through International, owns a 19.6 acre piece of property located in Coolbaugh Township, Pennsylvania, which International purchased from Landavel, Inc., a company previously owned by Kessler. Kessler also owned Country Place Water Company and Country Place Waste Treatment Company (hereinafter referred to as "Country Place Utilities"), which he sold to Cost Control Marketing (Cost Control) in 1985. In 1987, Kessler brought an action in this court against Cost Control to recover monetary damages arising from Cost Control's operation of the utility companies. The action was settled by Order

---

**1.** Additionally, PAWC sought a relief from stay from the United States Bankruptcy Court in or-

der to bring in Cost Control as a third-party defendant.

of Court dated November 6, 1987, adopting an agreement reached by the parties on September 17, 1987.

The 1987 settlement agreement between International and Cost Control provided, in pertinent part, the following:

Number 5: The parties acknowledge that International Land Acquisitions, Inc., its successors and assigns shall have the right to have any development of the 19.6 acres abutting section B owned by the aforesaid entity, connected or hooked up to the Central Water and Sewer Company owned by the aforementioned utility companies; such hookup or connection, however, shall be accomplished at the sole cost and expense of the person or entity owning the property at the time such connection shall be desired or requested.... The parties agree in covenant that the provisions of this paragraph and related subparagraphs shall be a covenant running with the land and in all respects be construed as same.

(1987 Settlement Agreement, Attached as Exhibit 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Summary Judgment). On October 19, 1991, Cost Control filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code, and, on September 14, 1994, a hearing regarding the auction and sale of Cost Control's utilities was held before United States Bankruptcy Judge John J. Thomas. At the auction, PAWC bid to purchase the assets of Country Place Utilities free and clear of liens, encumbrances and claims. On September 19, 1994, the sale to PAWC was approved by an Order of the Bankruptcy Court that contained certain findings of fact and conclusion regarding PAWC's purchase of the Country Place Utilities, including the following provision:

Pursuant [to] Section 363(f) of the Bankruptcy Code, such sale shall be free and clear of all liens, encumbrances and claims, other than the lien in favor of the Pennsylvania Water Facilities Loan Board to be assumed by the purchaser, with such liens, claims and encumbrances to attach to the proceeds of the sale in the order of priority

of such liens, claims and encumbrances in the underlying stock and assets of the Country Place Utilities under applicable law.

Order of September 19, 1994, at 5–6.

In January 1995, PAWC and the Country Place Utilities (Country Place Water Company and Country Place Water Treatment Company) filed applications with the PUC, seeking PUC approval of certain transactions. Included among these transactions were the sale of the waterworks property, the sanitary sewage collection treatment service, and the rights of the Country Place Utilities to PAWC. Although separate applications were filed by Country Place Water Company and Country Place Waste Treatment Company, each contained similar language specifying that all assets transferred to PAWC would be free and clear of any liens or claims, except for a loan in the amount of $450,000 to the Pennsylvania Water Facilities Board. The PUC approved the applications on April 28, 1995, and on June 30, 1995, PAWC executed separate bills of sale with both Country Place Water Company and Country Place Waste Treatment Company. Subsequently, PAWC began serving customers with the assets purchased from the Country Place Utilities.

International contacted PAWC in August 1995 to obtain water and sewer service for its proposed "Pocono Executive Suites" development, which was to consist of over two-hundred residential units. Following the request, PAWC informed International that certain improvements to the water system were necessary for PAWC to accommodate the entire development with such service. Specifically, PAWC insisted that the existing six-inch water pipe had to be replaced with a twelve-inch pipe in order to adequately supply water and sewer service to the proposed development and to avoid reducing water pressure to other properties served. Furthermore, PAWC maintained that International was required to pay for the cost of these improvements. International, on the other hand, claimed that PAWC was bound by the 1987 Settlement Agreement which required International to pay only for "hook up" charges. International argued further

that the improvements were unnecessary and refused to pay for them and requested that PAWC provide immediate service to five units rather than the entire development.

International subsequently changed its position, requesting again that PAWC provide service to the entire proposed development. PAWC notified International that with the existing system it could provide service to the five units previously requested, but in order to provide service to the entire development, the described improvements would need to be made at International's expense. In October 1995, International filed an action with the PUC requesting an order requiring PAWC to provide service to the proposed "Pocono Executive Suites" development. The case was scheduled for an initial hearing in April 1996, and, following several continuances, on September 10, 1996, the parties agreed to withdraw the case from the PUC because of the previously filed action in this Court.

The central issue in this case is whether International was obligated to pay for the improvements that PAWC was maintaining were necessary to accommodate the Pocono Country Estates development with water and sewer services. Although International concedes that under the terms of the 1987 settlement, it is responsible for sewer and water hook-up costs and any expenses associated with obtaining the required governmental improvements, it denies that it is responsible for any additional expenses. In support, International asserts that its predecessor "has undertaken *all* improvements which enable PAWC to supply adequate water and sewer service to [Pocono Country Estates,] . . . [and,] at its own expense, installed all of the pipelines on its land which PAWC would be using to service International's project." (Plaintiff's Rebuttal to Defendant's Suppl. Br. in Support of its Motion for Summary Judgment). Furthermore, International maintains that the existing six-inch pipe is sufficient to service Pocono Country Estates with water and sewer service and that all studies conducted support this assertion con-

trary to PAWC's contention that a twelve-inch pipe is necessary.

It is PAWC's position that it only purchased the assets from the Country Place Utilities and, pursuant to the Order of the Bankruptcy Court, assumed only the lien in favor of the Pennsylvania Water Facilities Loan Board and did not assume any obligations under the 1987 settlement agreement between International and Cost Control. Furthermore, PAWC also argues that the tariff issued by the PUC allows PAWC to determine what improvements to the water system are necessary [2] and that the applicant seeking the water service must pay for the necessary improvements. Finally, PAWC maintains that this matter is within the exclusive jurisdiction of the PUC because it concerns the reasonableness and adequacy of service and, therefore, this case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). International disputes this final contention, contending that the issue in this case is a contractual dispute between the parties that is not within the exclusive jurisdiction of the PUC and is properly before this Court.

## Analysis

In its Motion for Summary Judgment, PAWC has raised the defense that this action must be dismissed as the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). This defense may be raised at any time during the proceedings and, if the court finds that it lacks jurisdiction, it may dismiss the matter. FED. R. CIV. P. 12(h)(3). PAWC argues that under *DiSanto v. Dauphin Consolidated Water Supply Co.*, 291 Pa.Super. 440, 436 A.2d 197 (1981), the PUC has exclusive jurisdiction over this matter because the dispute arises under PAWC's tariff and concerns the "reasonableness, adequacy and sufficiency of public utility service." *DiSanto*, 436 A.2d at 200. International maintains that *DiSanto* is inapplicable because this case involves only the contractual obligations of the parties rather than the reasonableness of public utility service so that the "matter is not one peculiarly within the [PUC's] area of

---

2. The tariff provides in section 23.1(B) that "[t]he Company shall have the exclusive right to determine the type and size of mains to be in-

stalled and the other facilities required to render adequate service."

expertise" and is properly before this Court. *Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371, 377 (1980).

In *DiSanto,* the Superior Court of Pennsylvania held that the installation of water lines, the installation charges, and the requirement that the installation be conducted by approved contractors, concerned the reasonableness of a utility's services, facilities and rates. *DiSanto,* 436 A.2d at 201. The court declared that "issues, *be they contractual or not,* concerning the reasonableness, adequacy and sufficiency of public utility service [are] within the initial jurisdiction of the [PUC]." *Id.* at 200 (emphasis added). The court looked to the Pennsylvania Public Utility Law in finding that:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, *and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and for safety of its patrons, employees, and the public.*

66 PA. CONS. STAT. ANN. § 1501 (Purdon's 1979) (emphasis added). Furthermore, the court defined what constitutes public utility "service," finding that " '(u)sed in its broadest and most inclusive sense [it] includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished or supplied by public utilities.' " *DiSanto,* 436 A.2d at 200 (quoting 66 PA. CONS. STAT. ANN. § 102 (Purdon's 1979)). Finally, finding that the term "rate" would encompass, *inter alia,* every charge demanded for any service furnished by a public utility, the court ultimately held that the reasonableness of the water line installation policy was an issue that should be "heard by the PUC instead of by the courts." *Id.,* 436 A.2d at 201.

The issue in the instant matter, although it relates to the contractual obligations of the parties,[3] implicates utility "service" as broadly defined in the Pennsylvania Public Utility Law and calls into question the reasonableness of a public utility's policy. While International admits that it is required, under PAWC's Tariff, to pay any necessary improvements in order to obtain service, it has denied financial responsibility in this instance by calling into question the necessity of such improvements. The installation of a twelve-inch pipe in order to service Pocono Country Estates is clearly a proposed "improvement[ ] in or to such service and facilities" as contemplated by the Public Utility Law and constitutes a matter of public utility "service." 66 PA. CONS. STAT. ANN. § 1501.

It must be determined if the question of whether the installation is "necessary or proper for the accommodation, convenience, and safety of its patrons" is a matter within the expertise of the PUC. 66 PA. CONS. STAT. ANN. § 1501. The United States Court of Appeals for the Third Circuit,[4] applying Pennsylvania law in *MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086 (3d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996), recognized that the "PUC has enforcement power over its tariffs and regulations, and matters that pertain to those tariffs are considered to be within the particular expertise of the PUC." *MCI,* 71 F.3d at 1103. In further defining what falls within the PUC's "expertise" the court stated:

> [W]here the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency.... Where, on the

---

3. It is well-settled in Pennsylvania that where the private contractual rights of the parties are in conflict with the provisions of a tariff, the PUC may modify the provisions of the contract. *See Grant v. Southwestern Pennsylvania Water Authority* 144 Pa.Cmwlth. 638, 601 A.2d 1359, 1362 (1992) (citing *Leiper v. Baltimore and Philadelphia Railroad Co.,* 262 Pa. 328, 105 A. 551, 553 (1918)); *Brockway Glass Company v. Pennsylva-*

*nia Public Utility Commission,* 63 Pa.Cmwlth. 238, 437 A.2d 1067 (1981).

4. In a diversity action, if there is a conflict of laws, the court usually determines which state law will apply to the action prior to making any rulings. However, both parties have argued, and it will be assumed, that Pennsylvania law applies to all issues in this action.

other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*MCI*, 71 F.3d at 1104 (citing *Elkin*, 420 A.2d at 377).

The issue of whether PAWC's improvements are necessary is one that arises under PAWC's tariff and, under *MCI*, requires the special competence of the PUC. As the Third Circuit stated in *MCI*, "these tariffs are binding and dispositive of the rights and liabilities between the customer and the public utility." *Id.* at 1103. Therefore, the PUC has the power to revise or disregard contracts which would conflict with the terms of a tariff. Another reason for finding that this issue requires the expertise of the PUC can be found in International's contention that the improvements are not needed or required. In support of this argument, International has cited the studies of two engineering firms, the report of an engineer representing the Coolbaugh Township Board of Supervisors, and the D.E.R. (Plaintiff's Exhibits 14, 15, 16, to Suppl. Brief in Opp. to Defendant's Motion for Summary Judgment). The PUC would have expertise, special competence, and familiarity in interpreting and evaluating the conclusions and findings contained within such studies, as it does so on a regular basis. Moreover, the PUC is far better equipped and more familiar with the technical points that have arisen in this case, such as what type of water pressure and water system is required to provide a housing development with adequate water and sewer service.[5] Not to be overlooked is the impact on other utility customers both now and in the future. It can be anticipated that a question of the sufficiency of PAWC's water system requirements is likely to arise again and the PUC has a special interest in formulating agency policy under such circumstances. *MCI*, 71 F.3d at 1105. As a result, "[w]e must ... be sensitive to the need for uniformity and consistency in agency policy, which further suggests that the PUC decide the merits of [this] claim initially." *Id.*

In conformity with the "primary jurisdiction" approach taken in *MCI Telecommunications Corp.*, the case will be transferred to the Pennsylvania Public Utility Commission to interpret PAWC's tariff as it applies to the issues presented here. Principally, the PUC is to determine whether the tariff supports PAWC's position concerning the necessity of improvements needed to provide service to Plaintiff's property, as well as its impact on other customers and the responsibility of Plaintiff to pay for such improvements. Additionally, the PUC, without deciding whether the contract between International and Cost Control is binding on PAWC, should determine if it is inconsistent with PAWC's authority and responsibility under the tariff. The PUC is to address any other issue within its expertise that will aid in the resolution of the current dispute.

Therefore, Defendant's Motion for Summary Judgment will be granted to the extent that it contends that the PUC is the proper tribunal to determine those issues in which it possesses expertise but will be denied insofar as it seeks judgment based on the absence of jurisdiction. The Court will retain jurisdiction over the case and further action will be held in abeyance pending receipt of the findings and conclusions of the PUC.

---

5. For example, International claims there is adequate water pressure at present to provide the service requested while PAWC contends there is not. Also, International, contrary to PAWC, argues that the tariff does not mandate that it pay the cost of a twelve-inch line for fourteen thousand feet from PAWC's water services to International's property or that it pay 2.2 million dollars for the construction of a well. These tariff disputes are best left to the expertise of the PUC.